THE MISSOURI PACIFIC RAILWAY COMPANY V. A. A.
WILSON.

1. STOCK *on Public Highway.* In counties where no order has been made
by the board of county commissioners regulating or prohibiting the
running at large of animals, individuals may permit their stock to run
on the public highways, and in so doing they are not necessarily guilty
of negligence.

2. RAILROAD COMPANY, *Liable for Killing Heifer.* In an action against
a railroad company to recover the value of a heifer belonging to the
plaintiff, alleged to have been injured so that it would necessarily have
died from such injury, if it had not been actually killed by the employés
of the company, *held,* that though the injury complained of occurred at
the railroad crossing over a public highway, and at a place where the
company was not bound to fence, yet if such an injury was the result of
the negligent and careless operation of the train on defendant's railroad,
the company is liable for damages sustained.

3. STOCK LAW; *Verdict for Damages, Sustained.* If the employés of a
railroad company operating the engine of the train see cattle unattended
upon or about to go upon the railroad crossing over a public highway, at
a distance of three hundred yards before reaching the crossing, and fail
to sound the whistle to frighten them away from the track, and fail to
slacken the speed of the train, and otherwise fail to take any steps to
avoid running over the cattle, such omissions and conduct of the em-
ployés are sufficient to authorize a jury to render a verdict against the
railroad company for the damages sustained by the owner of the cattle
thrown from the track by the engine and train.

*Error from Lyon District Court.*

AT the March Term, 1882, of the district court, *Wilson*
recovered a judgment against *The Missouri Pacific Railway
Company* for the sum of $16, for damages for killing a heifer
belonging to the plaintiff, and for the further sum of $40.25
for costs of suit. The jury returned a general verdict for
the plaintiff, and answered in writing the following ques-
tions:

"1. If a steam whistle had been sounded at least eighty
rods from the place where the engine struck the animal to
recover the value of which this action is brought, would such
sounding the whistle in any way have prevented this animal
from being struck by the engine? A. Yes.

"2. Was not this animal, to recover the value of which this action is brought, struck by the engine while attempting to cross the track at the public crossing in front of the engine? A. Yes.

"3. Could not the animal that was killed have seen the engine and train which struck it, before it attempted to cross the track?   A. Yes."

The *Railroad Company* brings the case here.

*C. N. Sterry*, and *David Kelso*, for plaintiff in error.

*T. B. Nees*, and *Peyton, Sanders & Peyton*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action for damages for the negligent killing of defendant in error's heifer by a freight train on plaintiff in error's road. The facts in the case are briefly these: Wilson (plaintiff below) was the owner of a heifer, which he turned out of his corral into the public highway on the morning of June 29, 1881. On the evening of that day, the heifer, in a drove of cattle numbering from one hundred to one hundred and fifty, came down the highway which crosses the railroad near Wilson's house, and in attempting to cross the railroad was struck at the railroad crossing on the highway by the engine of a freight train. No one was in the immediate charge or control of the cattle. About twenty-five of the drove had succeeded in crossing the track when the heifer in controversy in trying to cross the track was struck. The track of the railroad at the crossing was such that parties on the train could ordinarily have seen the cattle at a distance of three hundred yards. No whistle was blown at a point eighty rods from the crossing, or as the engine approached the crossing. The train was running at its usual rate of speed, and that speed was not slackened until the heifer was struck. When the engine reached a point eighty rods from the crossing, the cattle had not reached the track. The engine threw the heifer from the highway into a pond, which the railroad company had made in building the track.

The day after, Wilson found her in the pond, her head mangled and badly injured; she could not get up; the section hands of the railroad knocked her in the head and buried her. After the plaintiff below had closed his evidence, the railroad company interposed and filed a demurrer thereto, upon the ground that no cause of action had been proved. This demurrer was overruled, and thereupon the company asked the court to instruct the jury to return a verdict in its behalf. This was also overruled. Complaint is now made of these rulings; and it is contended by counsel representing the company, that the owner of the heifer was guilty of such contributory negligence that he was not entitled to recover any damages; that in any event, unless the negligence of the defendant was gross, or the injury willful, the owner should be precluded from recovering: this upon the theory that as the heifer was running at large upon the highway, and not under the control of the owner or any other person, the animal was wrongfully upon the public highway with the owner's consent. The case of *Railway Co. v. Rollins*, 5 Kas. 167, is cited, and it is argued from the decision in that case, that although a person has a right to use the highway for the passage of his cows or other animals to and from the pasture, yet he must use ordinary and proper care and diligence in driving them, having reference to the situation of the road and the manner in which it is used; and that it was an act of negligence to suffer the heifer to be at large in the highway unattended, where she might go upon the railroad crossing. In the case referred to, it was decided that "ordinarily when a person allows his cattle to run on another's land without the owner's consent, the owner of the land is not liable for any injuries the cattle receive while there, unless the injuries are caused through his gross negligence. But when any person knowingly allows his cattle to run on the lands of the railroad company, in the vicinity of the railroad track, and thereby endangers the lives and property of passengers and others, he can recover only for injuries done to his cattle through the most gross and wanton negli-

gence of the railroad company." It was further stated, however, in the opinion, that the fence laws, stray laws, and laws regulating the running at large of stock, impliedly authorized cattle to run at large; at least, that by these acts cattle were authorized to run at large upon such public lands as the legislature had the right to dispose of in that way. It is not claimed that in the county where the animal was killed the board of county commissioners had made any order forbidding or regulating the running at large of animals, and therefore individuals in that county might permit their stock to run on the public highways of the county, and in doing so they would be guilty of no wrong. Therefore the plaintiff below, in turning his heifer out of the corral into the highway, was not necessarily guilty of negligence. Every owner of cattle has the right to depasture his cattle or stock upon the grass growing along a highway, where he owns the soil over which the highway is laid; and under the statute of our state, impliedly authorizing cattle to run at large, he may turn his cattle out of his corral into the highway to graze unattended, without being charged with negligence or carelessness. With this conclusion, we must answer that the trial court did not err in overruling the demurrer to the evidence, or in refusing to direct the jury to return a verdict for the railroad company. As the plaintiff below had the right to permit his cattle to run at large upon the public highway, the instruction of the court in regard to this matter was not misleading or materially erroneous, as the heifer did not run at large upon the private property of any individual, or of the railroad company. The only "uninclosed land in the neighborhood" mentioned in the testimony was the public highway. The court instructed the jury, "That if they believed from the evidence the animal in question was injured by the negligence and careless operation of the train of the railroad company, and that the animal would have necessarily died from such injuries, they would find for the plaintiff." It further charged the jury, "That it was the duty of the railroad company to manage its train with

that decree of care and caution which would be exercised by a person of ordinary care and prudence under the same circumstances, if all the property to be affected by his act was his own; and a less degree of care and caution than this would be negligence." The court did not err in these instructions. If the employés of the railroad company could by the use of ordinary prudence see, or seeing the stock on the road could without danger stop the train and avoid striking the animal, they were required to do so, because the idea is not tolerable that an injury may be inflicted which by ordinary care and diligence may be avoided. This is the rule in the ordinary affairs of life, and is as applicable to corporations as to individuals. (*Rld. Co. v. Caffman*, 38 Ill. 425; *Rld. Co. v. Lewis*, 58 Ill. 49; *Rld. Co. v. Phillippi*, 20 Kas. 9; *Rld. Co. v. Rice*, 10 Kas. 426.) Although the drove of cattle could have been seen from the train approaching the crossing, no attempt was made by the sounding of the whistle to frighten the cattle and make them run away, and no attempt was made to slacken the speed of the train or prevent it from running into the drove. Therefore there was evidence to go before the jury as to the negligent and careless operation of the train by the railroad company, and also evidence that the heifer was thrown from the track through the result of such negligence. Counsel complain that the instructions should have been so modified as to have informed the jury that if the negligence of the owner of the animal directly contributed to the injury of the animal, he could not recover except gross negligence was shown on the part of the company. No such instruction was asked for, and the court of its own motion was not required under the evidence to give such an instruction. There was no error in refusing the instructions asked, and the charge of the court to the jury was not so misleading, under the evidence presented, as to prejudice the rights of the railroad company. (*Kuhn v. Rld. Co.*, 42 Iowa, 420.)

The judgment of the district court will be affirmed.

All the Justices concurring.