THE MISSOURI PACIFIC RAILWAY COMPANY v. W. M. C. REYNOLDS.

1. QUESTIONS OF FACT, *Embraced in Other Inquiries.* Where a party states in writing particular questions of fact, and asks the court to direct the jury to find thereon, no material error is committed by the court if the specific questions are refused, provided others embracing the substance of the inquiries are submitted to the jury in the other interrogatories.

2. NEGLIGENCE, *Jury to Fix — When Not.* In an action against a railroad company to recover the value of cattle belonging to the plaintiff, alleged to have been injured by the negligence of the railroad company at a public crossing, the company, upon the trial, requested the court to

direct the jury to find upon the following question: "If the jury should find that the defendant was negligent, state fully in what such negligence consisted." The court refused to submit the question to the jury, and thereby committed no error. Under § 286 of the code, the court is not bound to submit such general questions of fact to the jury as will require them to find a special verdict upon the issues in the case, or compel them to state at length or in detail new facts not particularly mentioned in the general question, (*Foster v. Turner*, ante, p. 58;) but where in the nature of things the jury can point out the negligence imputable to the defendant, the court, if requested, may in its discretion direct the jury to fix the negligence or state in what the alleged negligence consists, and the jury should do so. If it is impossible for them to do this upon the evidence, the failure to fix the negligence will not defeat a recovery.

3. RAILROAD CROSSING — *Cattle Near* — *Duty of Engineer.* Where a passenger train upon a railroad track is approaching a public crossing over the right-of-way, and the engineer and fireman see cattle half a mile distant, nearly in front of the train and some forty or fifty feet away from the track, they are not bound to stop the train; but they ought, for the safety of the passengers and others upon the train, as well as to prevent the infliction of unnecessary damage to the cattle, use ordinary prudence to ascertain whether the cattle are likely to attempt to cross the track upon the public highway in front of the engine; and if by keeping an outlook they can ascertain this, it should be done, and then they should use ordinary care and diligence to prevent the cattle, if they are about to cross the track, from being run over.

### *Error from Jackson District Court.*

ACTION by *Reynolds* against the *Railway Company*, to recover damages for injuries to certain cattle owned by plaintiff. Trial at the March Term, 1882, and verdict and judgment for plaintiff for $125. The defendant brings the case to this court. The opinion states the facts.

*Everest & Waggener*, for plaintiff in error.

*Hayden & Hayden*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by Reynolds against the railroad company, to recover damages for injuries to certain cattle belonging to him. The bill of particulars alleged, among other things, that the animals injured, casually

and without the fault of the owner, strayed in and upon the track and grounds occupied by the railroad company; that the company, by its agents and servants, so carelessly and negligently ran and managed its engine and cars that the same ran against and over the cattle, rendering them worthless. The jury impaneled in the case found specially that the cattle were run over at a public crossing, and returned a verdict against the company for $125. Judgment was rendered thereon. The case seems to have been tried in the district court on the part of Reynolds upon the theory that the steam whistle attached to the engine was not sounded as required by the provisions of the statute; that no alarm was given to drive or frighten the cattle away from the track; that the employés in charge of the engine and train saw the cattle a long distance from the crossing, grazing in close proximity to the track, and were guilty of negligence in not trying to avoid them at the crossing, and in not attempting to prevent their injury.

On the part of the railroad company, evidence was offered tending to show that the whistle was sounded as prescribed by the statute; that the cattle came suddenly upon the defendant's road, and jumped in front of the engine so close thereto that by the exercise of even great care on the part of the engineer and the other employés of the company, they could not prevent the train from running over them; and that they were injured by unavoidable accident.

Various questions are presented to us for determination; but while we shall refer to all of them, we shall do so as briefly as possible, as most of them are settled by prior adjudications of this court.

I. The first complaint is, that as the bill of particulars did not allege any non-compliance with the provisions of § 60, ch. 23, Comp. Laws of 1879, the court erred in permitting evidence to be introduced to prove the whistle attached to the engine was not sounded as required by the statute. This is not material, because the findings of the jury show that

the evidence did not convince them that the whistle was not sounded. (See, however, *Railroad Co. v. Phillippi*, 20 Kas. 9.)

II. The railroad company requested the court to direct the jury to find upon certain particular questions of fact. The court refused to submit those asked for. All of these but one (to which we will refer hereafter) were inquiries as to the exercise of the care taken by Reynolds to prevent his cattle from being injured, the purpose of the inquiries being to establish by the special findings, if possible, that Reynolds was guilty of contributory negligence in turning the cattle out to graze, and in permitting them to run at large. While the particular questions asked for were refused, yet others, embracing the conduct of Reynolds concerning his care of the cattle, were submitted to the jury. These were as follows:

"Was it at a public crossing over the defendant's track and right-of-way where the accident occurred and the stock were injured? A. Yes.

"Did the plaintiff, at the date of the injury, reside in close proximity to the railroad track and in full view thereof, and had he resided there for several years and knew how the trains were run and operated thereon? A. Yes.

"Was the plaintiff, at the time of the injury, and had he been for the month prior thereto, in the habit of turning his cattle out into the highway which crossed the railroad track, leaving them at liberty to stray where they saw fit? A. Yes.

"Did not the defendant's train of cars, at the time of the injury, and for several months prior to the injury, pass in plain view of the plaintiff's house, passing the crossing?—and did not the plaintiff with the knowledge thereof, on the day of the accident turn his cattle out into the public highway, leaving them at liberty to stray on the defendant's track and on said crossing? A. Yes.

"At the time the plaintiff turned his cattle out, on the morning of the accident, was there anything to prevent them from wandering or straying upon the defendant's track and on the said public crossing where trains of cars were passing and repassing? A. No."

Reynolds occupied forty acres of land, and his house was

seventy rods on the north side of the railroad track, and about half a mile east of the public crossing where the cattle were run over. This highway was forty feet wide. A hedge was on the south side of his land, and the road was fenced on both sides of the highway. The catte were kept up nights, but mornings were turned loose and permitted to run on the commons or vacant prairie. Upon the special findings of the jury and the facts as proved, we do not think there was anything tending to establish contributory negligence on the part of Reynolds. (*Railway Company v. Wilson*, 28 Kas. 637.)

III. One of the questions which the court refused to submit, was the following: "If the jury should find that the defendant was negligent, state fully in what such negligence consisted." Our first impression was that this question was pertinent, and should have been submitted. A more careful examination, however, has convinced us that while the court in its discretion might have admitted this question to the jury, leaving the jury to state the particular facts constituting the negligence, yet it was not error in refusing so to do. Under § 286 of the code, the jury are not required to do anything except to render a general verdict, and in addition thereto to make findings upon such particular questions of fact as are stated in writing by one or both of the parties, and as requested by such party or parties. (*Foster v. Turner*, ante, p. 58.) Where in the nature of things a jury can point out the negligence upon which their verdict is based, the court, if requested, may in its discretion very properly direct the jury to fix the negligence, and the jury should do so. If it is impossible to do this, upon the evidence, the failure to fix the negligence will not defeat a recovery; but as the court, under the statute, is not bound to submit such general questions of fact to the jury as will require them to find a special verdict, or compel them to state at length or in detail new facts not particularly mentioned in the general question, no error is committed when the court refuses to submit such a general question. (*Foster v. Turner*, supra.)

IV. The jury with their verdict returned answers to questions of fact submitted, and the railroad company objected to the action of the trial court in discharging them without requiring them to make their answers more specific and certain. Most of the answers were signed, " We think not," or "Think not." "We think not," was equivalent to "No." The answers "Don't know" to the questions to which they were affixed, established that the evidence introduced did not show that the engineer or fireman was incompetent to discharge the duties of their employment; and also the evidence did not prove that the whistle to the engine was not sounded. The answer that seems most indefinite was the finding of the jury that the engine was from ten to fifty feet distant from the stock when they first came upon the track. We do not perceive, however, that the court, under the circumstances of the case, committed any error in refusing to compel the jury to make this finding more definite. The evidence was somewhat conflicting, and it would be difficult for any one to state, from the evidence, with precision, the exact distance the engine was from the cattle when they reached the track.

V. Finally, the counsel for the railroad company contend that there was no evidence introduced tending to prove negligence against the company. They say that the verdict and findings of the jury are contrary to and against the evidence. The evidence tending to establish negligence on the part of the railroad company is not very clear or positive, but we think there was sufficient presented to support the verdict of the jury. It is apparent that the whistle on the engine was sounded before reaching the crossing, as required by the statute; but there was some evidence offered which the jury might properly regard as tending to prove that the employés in charge of the engine, after having seen the cattle near the track, were not sufficiently attentive in the discharge of their duties.

The engineer testified that it was the duty of the fireman, as well as his own, to look out for anything on the track; that he first saw the cattle half a mile away, grazing along

the track, and about forty feet away from the track; that they were not approaching the track when he whistled, and he did not whistle again because they did not move toward the track at the time; that when he blew the whistle, he knew it was likely the cattle would move, and when they did not move at that time, he thought he would try to get by without alarming them; that the cattle moved toward the track when he was not looking at them; that they were out of his sight until he got within a little distance from them, but the fireman could have seen them all the time if he had been looking, as his place was on the left-hand side of the cab and on the side where the cattle were, while his place was on the opposite side.

If the fireman had kept a proper lookout after the engineer blew the whistle, he ought to have seen that the cattle were moving toward the crossing, and if he had given this information to the engineer, as it was his duty to do, the engineer would have known that the cattle were approaching the track, and would not have tried to pass them, as he was attempting to do, without alarming them. Upon seeing the cattle forty or fifty feet from the track, the employés of the railroad company in charge of the engine and train were not bound to stop the train; but they ought, for the safety of the passengers and others upon the train, as well as to prevent the infliction of unnecessary damage to the cattle, to have used ordinary prudence to ascertain whether the cattle were likely to attempt to cross the track upon the public crossing in front of the engine; and if by keeping an outlook they could have ascertained this, it should have been done, and then they should have used ordinary care and diligence to prevent the cattle, if they were about to cross the track, from being run over.

The jury were not satisfied that the cattle came suddenly on the track just before being struck. (*Railway Co. v. Wilson*, supra.)

The judgment of the district court will be affirmed.

All the Justices concurring.