City of Nevada, Missouri, a Municipal Corporation, v. John C. F. Welty and Merlin L. Welty, Appellants.—No. 40128.—203 S. W. (2d) 459.

Division One, June 9, 1947.

Rehearing Denied, July 14, 1947.

*A. E. Elliott* for appellants.

*Amos Wight* for respondent.

HYDE, J.—This is an action seeking a declaratory judgment to uphold the validity of an ordinance of the City, declaring stock pens in defendants' sales pavilion to be a nuisance and ordering their removal. The court entered judgment sustaining the validity of the ordinance and defendants appealed. The City has filed a motion to dismiss this appeal for failure of defendants' brief to comply with the rules, which is overruled because we find it sufficient for consideration of the points raised.

The City sought a declaration not only as to the validity of the ordinance but also that it and its officers would not be liable in damages to defendants if it removed the stock pens. Defendants' answer asserted their intention to sue the City "and its officers who destroy any of their property illegally." The judgment declared the ordinance valid; finding that defendants maintained stock pens or a stockyard on their premises, that this is "dangerous and detrimental to the health of the inhabitants of the City living near thereto and is in fact a nuisance," and that they refused to remove them, after notice, in compliance with the ordinance. The judgment further declared: "that in the event said stock pens or stockyard are removed by the plaintiff acting through its Chief of Police, said Chief of Police and those acting under his direction shall not be liable for damages for the removal of said stock pens or stockyard provided that in the removal of said stock pens or stockyard no unnecessary or unreasonable damage is done to the property of the defendants and that the plaintiff shall not be liable for damages unless the plaintiff directs said Chief of Police to damage the property of defendants to an extent not reasonably necessary for removal of said stock pens or stock yard."

Defendants contend that this is not a proper case for a declaratory judgment. They say the City is asking for an advisory opinion upon a state of facts which have not arisen. We think it is

clear that there was a controversy over the validity of the ordinance and that the City sought a declaration of its rights thereunder. This is expressly authorized by Section 2 of the Declaratory Judgment Act. [Section 1127, R. S. 1939, Mo. Stat. Ann.] While the above quoted declaration, concerning the removal of the stock pens, is stated so as to seem to be subject to the criticism of being an advisory opinion on hypothetical facts, what it really means is that the City has the right and authority to enforce the ordinance by removing the stock pens in a reasonable and proper manner without any unnecessary damage. Actually the City's rights and liabilities under the ordinance was a present controversy. Defendants could have had the validity of the ordinance and its effect upon their rights determined by a declaratory judgment action before proceeding in defiance of it. We hold that declaratory judgment was a proper remedy for the City.

Defendants contend that the ordinance is invalid because they say the stock pens did not in fact constitute a nuisance and, therefore, the City could not declare and suppress them as a nuisance; and that to do so deprives them of their property without due process of law in violation of State and Federal Constitutional provisions. Defendants, who are auctioneers, have conducted live stock sales since 1932 in a pavilion on the Northwest corner of the intersection of Cedar Street (running North and South) and Hunter Street (running East and West). Hunter Street divides the business section of the town from the residential section. The public square and main retail business section is one block to the south. Defendants have a filling station on the southeast corner of their property; west of the filling station is a building occupied by a restaurant, implement store and defendants' office and north of this is the pavilion containing the live stock sales ring and the cattle and hog pens. The east portion of the premises (north of the filling station) is vacant and is equipped with cattle chutes. Adjoining defendants' property on the west is a building occupied by Swift & Company's buying station; next to it (with a vacant lot between) is the Baptist Church. The remainder of the block is entirely built up with residences, except that the Catholic Church and Parochial School is in the northwest corner. The block to the east, across Cedar Street, is entirely built up with residences except that the Presbyterian Church is in the southeast corner. Other blocks to the north and east are residence blocks.

Sales were held every Saturday and a large volume of cattle, hogs, sheep and some horses and goats were handled. Stock sold on a single day reached a maximum of 500 hogs and 175 cattle. Sheep averaged 50 or 60 per sale and horses 12 to 15. Live stock was brought to defendants' premises each Saturday morning by trucks, unloaded in the pens and remained until after the sale. Live stock was brought from territory extending about 75 miles each way from

the City. Live stock was removed by trucks, the time depending on the purchasers. Some stock would not be moved until late at night and occasionally not until Sunday morning. Stock trucks would begin to arrive before 10:00 A. M. and were parked on both sides of the adjacent streets for several blocks, blocking traffic and residence driveways, remaining until the live stock was removed. More than 1000 people would attend the sales.

In August 1945, the stockyards and buildings were burned and, thereafter, defendants appeared before the City Council to secure a building permit which was refused. Defendants began to rebuild without it. On September 19, 1945, a notice was served ordering them to appear before the City Council and show cause why the maintenance of their stock pens should not be abated as a nuisance. A public hearing was held by the Council, at which defendants and their supporters were heard, as well as persons opposed to the stock pens. Thereafter the City Council duly passed the ordinance in question and a certified copy thereof was served on each of the defendants on November 8, 1945, ordering them to remove the nuisance within thirty days. Defendants refused to remove the stock pens and they were still in operation at the time of the trial. Defendants also advised the officers of the City that if the pens were removed by the city officers as provided in the ordinance, they would sue the city and its officers.

Defendants rebuilt their pavilion building with walls of concrete block construction completely enclosing the stock pens. There was ventilation through windows in the walls and louvres in the roof. They said the cost of reconstruction was about $17,000.00, and that their total investment in the property was $25,000.00. The hog pens had a concrete floor and were connected with the sewer so that they could be flushed "from one end to the other." The cattle pens had only cinders and could not be washed. The capacity of the pens was about 500 head of stock. A Deputy State Veterinarian inspected the animals brought there, to prevent sale of diseased animals. Defendants' witnesses said the pavilion is kept as clean as it could be kept; "just about as sanitary as it is humanly possible to make it." However, it was admitted that there was manure on the floors of the stock trucks which were parked on the adjacent streets throughout the day; and that after the sales there was manure in the pens. One of defendants' witnesses said: "I have never seen anything unsanitary about it any more than what would naturally be from keeping stock, running stock through the pens, but go back there the next day and it is just as clean as can be." Defendants had an employee who raked up the manure in the pens after each sale, commencing not later than Monday morning. This was hauled to one of defendants' farms and the cattle pens were limed.

The City's evidence showed that stock trucks in a filthy condition would be parked throughout the neighborhood and that manure and seepage from them would fall on the street, that there would be barn lot odors from the trucks and from the pavilion; that there were many flies in warm weather, including horse flies and blow flies; that there was much squealing of pigs and bawling of cattle, especially with the unloading and loading of stock, which continued into the night; and that, although the odors were not so noticeable during the winter, the odors and flies were very offensive in the summer and made it too unpleasant for residents of the neighborhood to use their porches and yards in the summer. There was further testimony that horses were often kept on the lot east of the pavilion and that similar odors came from it. There was also evidence that there was no way to clean a cinder floor so that there would be no odor; that urine from cattle sinks down through the cinders; that lime would not keep down the odor; that "the more you barn it, the more odor you have got because the air can't get to it"; and that there was no method to operate a stock sales pavilion without having manure and flies.

Nevada is a City of the third class and under Section 6957, R. S. 1939, Mo. Stat. Ann. may, by ordinance, regulate, suppress or abate stockyards, pigpens, cow stables and other stables; regulate or prevent the carrying on of any business which may be dangerous or detrimental to the public health; and prevent, abate and remove nuisances in a summary manner at the cost of the occupant. We think that the stock pens maintained by defendants unquestionably come within the class of pens, stables and stockyards described in the statute. This court considered a similar situation in Potashnick Truck Service v. City of Sikeston, 351 Mo. 505, 173 S. W. (2d) 96. That was also a case in which stock was kept for intermittent periods, while being assembled for shipment by truck to St. Louis. There, too, the evidence showed that the pens were cleaned after each use. However, in that case the pens were not located in as congested business and residence districts as in this case; and those pens had smaller live stock capacity than the ones herein involved. We said, therein: "There can be no doubt that the continuous maintenance and congestive use of a hog and cattle pen in such an environment as that shown here, with resulting sounds, smells, filth and vermin detrimental to the peace, comfort and health of numerous surrounding inhabitants would be a public nuisance, or even a nuisance per se in the sense that any similar place would always be a nuisance in like circumstances." We held that the court properly denied plaintiff's claim therein for an injunction to restrain the enforcement of an ordinance (similar to the one in this case) declaring the stock pens a nuisance and ordering removal within 30 days. We consider that case and the authorities therein cited to be decisive of defendants' contentions in this case, that their stock pens do not constitute a nuisance and that the City

could not declare and suppress them as a nuisance. [See also State ex rel. Renfró v. Service Cushion Tube Co., 316 Mo. 640, 291 S. W. 106; City of Sturgeon v. Wabash R. Co., 223 Mo. 633, 17 S. W. (2d) 616; 39 Am. Jur. 347, Sec. 64; 37 Am. Jur. 935, Sec. 293; Joyce—Law of Nuisances, Chap. XI.] We, therefore, hold that the trial court's finding on these issues was correct and that the ordinance is valid and enforceable.

We further hold, as we did in the Potashnick case, that defendants, having had notice and hearing before the Council and judicial review of its action, have had all that they are entitled to, procedurally. Therefore, their constitutional grounds cannot be sustained. [See 16 C. J. S. 1230, Sec. 612.] As pointed out in the Potashnick case, the type of use involved in this case has been classified by statute as a nuisance and the statute authorizes suppression thereof by the City when such use is a nuisance in fact. The reasons why an owner is not entitled to compensation for property rightfully destroyed or damaged by a City in abating a nuisance is well stated in the following quotation from Joyce on Nuisances 510, Sec. 352: "Such destruction for the public safety or health, is not a taking of private property for public use, without compensation or due process of law, in the sense of the constitution. It is simply the prevention of its noxious and unlawful use, and depends upon the principles that every man must so use his property as not to injure his neighbor, and that the safety of the public is the paramount law. These principles are legal maxims or axioms essential to the existence of regulated society. Written constitutions presuppose them, are subordinate to them, and cannot set them aside. They underlie and justify what is termed the police power of the State."

Defendants, however, say that the right to abate a nuisance does not authorize the destruction of lawfully erected property, citing Allison v. City of Richmond, 51 Mo. App. 133; Divers v. Lando, 220 Mo. App. 50, 285 S. W. 746; and City of St. Joseph v. Georgetown Lodge (Mo. App.), 11 S. W. (2d) 1082. They seem to think that the City may attempt to destroy or damage their building. However, the City's brief says that it "did not proceed against the building in which the pens were located." The petition and the ordinance show that only the stock pens in the building are claimed to constitute the nuisance; and that is all the judgment declares. The building, and even the concrete floor therein, may be used for any lawful and proper purpose. We agree with the Allison case, that where it is the use to which a building is put that constitutes a nuisance, "this would only authorize the suppression of the use and not the destruction of the building." In this case it was the stock pens in defendants' building, constructed solely to be used for the purpose of keeping livestock therein, that made the use of their building a nuisance. It is not contended that the stock pens would be used for

any other purpose than keeping livestock and so it is these pens and their use that constitute the nuisances. Their removal is necessary to prevent such use. We, therefore, hold the City had the authority to require in the ordinance that defendants must remove the stock pens and to authorize its Chief of Police to do so at their cost if they do not. Of course, this does not authorize the City to keep or to destroy the material of which the stock pens are constructed. We further hold that the judgment, as we have hereinabove construed it, was proper as a declaration of the validity of the ordinance and of the City's rights to enforce it by removing the stock pens in a reasonable and proper manner without any unnecessary damage to defendants' property.

The judgment is affirmed. All concur.