OTTO TIETJENS, EDGBERT A. RAMSEY and LAURA E. RAMSEY, ARTHUR M. COOPER, NATALIA MOISER, WILLIAM F. SCHMIDT and BARBARA C. SCHMIDT, KATE WEINERTH, JOHN SKARHA, JAMES T. ALDRICH and ATHALIA F. ALDRICH, LESLIE E. WINGO and BLONDELL WINGO, WILLIAM S. TURNSTALL, PAUL BRUCKNER, JR., and FLORENCE BRUCKNER, FRANK WOELTGE and LAURA WOELTGE, R. A. BAUNDENDISTEL, INC., and GEORGE C. DIEGHERT, for Themselves and on Behalf of the Class of Owners, Lessors, Sublessors of Housing Accommodations Located in the City of St. Louis, Missouri, Plaintiffs-Appellants, v. The CITY OF ST. LOUIS, a Municipal Corporation, ALOYS P. KAUFMANN, Mayor of the City of St. Louis, CHARLES C. WILSON, KATHRYN CROSS and ROBERT N. OWENS, Acting as Housing and Rent Commissioners of the City of St. Louis, H. SAM PRIEST, President of the Board of Police of the City of St. Louis, and J. E. TAYLOR, Attorney General of the State of Missouri, Defendants-Respondents, No. 41343—222 S. W. (2d) 70.

Court en Banc, July 11, 1949.

*Jones, Hocker, Gladney & Grand, Lon O. Hocker, Jr.,* and *Benjamin Roth* for appellants.

*Robert Kratky* for respondents.

*Arthur M. O'Keefe,* Assistant Attorney. General, for J. E. Taylor, Attorney General of the State of Missouri.

DOUGLAS, J.—The question for decision is whether the city of St. Louis is authorized to enact a rent control ordinance. Since the city's charter has not granted it specific power to legislate on such a subject, its authority to do so must be reasonably implied from the broad power in its charter to regulate business generally in the interest of the health, safety and welfare of its inhabitants. While we recognize the worthy purpose sought to be accomplished, still we must hold that the settled law of this state does not permit a city to invoke such power on the ground it is reasonably implied in general powers. Such authority as the city now has to control rates and charges, such as ferry charges and water rates, is by specific grant.

There is also an incidental question of procedure in the case, whether the pleadings present an existing controversy between the parties

which has sufficiently developed for determination by a declaratory judgment. We shall first decide the latter question.

The plaintiffs own property in St. Louis which is now, and will be, rented to tenants and lodgers. The property consists of apartment buildings, multiple family flats, rooming houses and a hotel. Plaintiffs have brought this action for a declaratory judgment to test the validity of an ordinance adopted by the people of St. Louis by popular vote in August, 1948. The purpose of the ordinance is to control rents and evictions. The ordinance creates a Housing Rent Commission which is authorized to establish rent ceilings on newly constructed and converted housing accommodations. It provides a rent ceiling for permanent guests in hotels. The penalty for violating the ordinance is a fine of $500 and imprisonment for ninety days. The ordinance is intended to supplement the Federal Housing and Rent Act of 1947, 50 U. S. Code App., Sec. 1891, which did not continue the federal regulations of hotels or newly constructed or converted housing accommodations. The Housing Act was part of the Federal Emergency Price Control Act of 1942. The Missouri state control act, also intended to supplement the Federal law, expired by its terms on June 30, 1948. Laws 1947, p. 474.

The ordinance also imposes restrictions on the right of a landlord to evict his tenants and recover possession of his property. These restrictions were tied in with sections of the 1947 Federal Act which have since been repealed by the 1949 Housing and Rent Act. 50 U. S. Code App., Sec. 1899 as amended. Accordingly, it is conceded by respondents that the restrictions on evictions are no longer operative, leaving only the matter of rent control now for determination.

Plaintiffs have joined as defendants the city, members of the Housing Rent Commission, public and law enforcement officials. In their petition they assert the subject of the ordinance is beyond the charter powers of the city, and that it violates various constitutional provisions. They ask the court to determine the constitutionality of the ordinance and plaintiffs' rights, status and legal relations under it.

The trial court dismissed the petition on the ground it did not show a present legal controversy between the parties. It declared it had no jurisdiction ''to give advisory legal opinions as to anticipated controversies that have not arisen and may never arise.'' Plaintiffs have appealed. The trial court has correctly stated the law but we disagree with its holding there is no present controversy. We find the record discloses an actual and existing controversy which has sufficiently developed so as to be properly determinable by a declaratory judgment.

The Declaratory Judgment Act does not intend that courts should issue advisory opinions on hypothetical facts or on some possible future transaction. A declaratory judgment presupposes a present controversy between actual parties as to their respective rights and

obligations arising from an actual transaction or an intended transaction presently prohibited by law or contract. As we said in City of Joplin v. ▮▮▮ Jasper County, 349 Mo. 441, 161 S. W. (2d) 411, there must be a sufficiently complete state of facts presenting issues ripe for determination before a court may declare the law in a declaratory judgment action. A mere difference of opinion or disagreement or argument on a legal question does not afford adequate ground for invoking the judicial power. And see Declaratory Judgments, 26 Washington University Law Quarterly 468, by Judge Laurance M. Hyde.

The Declaratory Judgment Act expressly provides for testing the validity of a statute or ordinance. Section 1127 R. S. 1939, Mo. RSA, provides: "Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

The fact that in this case the city was not prepared, because of failure to appropriate funds, to enforce the ordinance when this action was filed, or that plaintiffs had not then actually violated the restrictions of the ordinance does not make this action premature. The ordinance had been duly adopted. It was a law affecting the plaintiffs. The plaintiffs must assume the city will enforce its laws.

This court considered a similar situation in City of Nevada v. Welty, 356 Mo. 734, 203 S. W. (2d) 459, and our ruling is pertinent to this case. That was an action seeking a declaratory judgment to test the validity of a city ordinance, and to declare the immunity of city officials in the future enforcement of the ordinance. Answering the charge that the city was asking for an advisory opinion upon a state of facts which had not arisen, we said: "We think it is clear that there was a controversy over the validity of the ordinance and that the City sought a declaration of its rights thereunder. . . . Actually the City's rights and liabilities under the ordinance were a present controversy. Defendants could have had the validity of the ordinance and its effect upon their rights determined by a declaratory judgment action before proceeding in defiance of it. We hold that declaratory judgment was a proper remedy for the City."

We find from the petition in this case that some of the plaintiffs own property which is subject to rent control under the ordinance. The petition states "that they do now and intend in the future to rent their properties for an amount in excess of the 15% of the maximum established" under the ordinance. Accordingly we hold the record discloses a present, existing controversy sufficiently developed for determination under the Declaratory Judgment Act.

So we turn to the question of the city's power to enact the ordinance. ▮ The city concedes its charter does not give it the express power to control rents. But it claims that such power may be fairly implied in the powers which are expressly granted it, particularly those granted it to license and regulate business and to do all things expedient to the health and welfare of its citizens. Therefore it claims that rent control is a valid exercise of its police power.

Reasonable regulation of the use of property is a valid exercise of the police power of a state or of the nation. As Justice Roberts has said: "Under our form of government the use of property and the making of contracts are normally matters of private and not of public concern. The general rule is that both shall be free of governmental interference. But neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest." Nebbia v. New York, 291 U. S. 502, 89 A. L. R. 1469.

Rent control after World War I established by Congress over the District of Columbia was held to be a valid exercise of police power in Block v. Hirsh, 256 U. S. 135, ▮ 16 ALR 165. Housing laws enacted by the State of New York in 1920 were held valid in People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429, 130 N. E. 601, 16 ALR 152. There the court said: "The conclusion is, in the light of present theories of the police power, that the state may regulate a business, however honest in itself, if it is or may become an instrument of widespread oppression; [citing cases] that the business of renting homes in the city of New York is now such an instrument and has therefore become subject to control by the public for the common good." Accordingly, the court held that the provisions of the housing laws enacted by the state for the regulation of rents and the suspension of possessory remedies were valid. See also: Levy Leasing Co. v. Siegel, 258 U. S. 242. The controls over housing accommodations adopted by Congress in the Emergency Price Control Act of 1942, 50 USC App., § 901 et seq. were held valid in Bowles v. Willingham, 321 U. S. 503.

Thus, it is settled that the police power of a state or of the nation under appropriate circumstances properly comprehends the authority to control rents. However, this case is not concerned with the *state's* authority to control rents but with the authority of the city of St. Louis to do so. The state has not delegated such particular authority to the city, nor does the city's charter expressly give it the power.

▮ In its relations with cities the state retains control to a great extent over the governmental functions of a city. Exercise of the police power is a governmental function, the control of which remains

in the state. A city has no inherent police power. Its authority to exercise such power within a particular field must come from a specific delegation by the state or in certain cases from the express or fairly implied grant of powers of its charter. Kansas City v. J. I. Case Threshing Mach. Co., 337 Mo. 913, 87 S. W. (2d) 185; Ex parte Williams, 345 Mo. 1121, 139 S. W. (2d) 485.

Since neither the state nor the city's charter has granted the city the express power to control rents, the issue is narrowed to the question whether such power is necessarily or fairly implied in or incident to the powers expressly granted or those essential and indispensable to the declared objects and purposes of the charter provisions. The answer to the question must be no. The fixing of rents, or for that matter of prices or rates for any commodity or service, except those specifically mentioned in the charter, may not be fairly implied or held to be incident to any power granted by the city's charter. The general welfare clause of the charter may not be construed so as to enlarge the powers of a city further than is necessary to carry into effect the specific grants of power. City of St. Louis v. King, 226 Mo. 334, 126 S. W. 495. Thus it is clear the city had no authority to adopt the ordinance, and it is therefore invalid.

We have considered the question of a city's power to fix telephone rates in two earlier cases and held that such authority may not be implied from the city's general charter powers. City of St. Louis v. Bell Telephone Co., 96 Mo. 623, 10 S. W. 197; State ex rel. Garner v. Missouri & K. Telephone Co., 189 Mo. 83, 88 S. W. 41. The St. Louis case held that the power to fix rates was not included in the general power to regulate a business, nor could such power be implied from the general welfare clause of the charter. In the second case we indicated that the power to fix rates was a governmental power reserved to the state unless delegated to a city. The reasoning of these decisions clearly demonstrate that the city under the existing facts of this case is not authorized to fix rents.

The power of the city of New York to prohibit sales of commodities in excess of ceiling prices fixed by the Federal Price Administrator was upheld as being within the field of legislative power of the city as defined in the Constitution of the State of New York, the City Home Rule Law, and the New York City Charter. People v. Lewis, 295 N. Y. 42, ▆ 64 N. E. (2d) 702. But the same power was denied the city of Cleveland because the subject matter was held to be within the exclusive control of Congress since the subject matter of nationwide rationing and price control of commodities as well as price control of rents was national in character and could be governed only by a uniform system. City of Cleveland v. Piskura, 145 Ohio St. 144, 60 N. E. (2d) 919. On the question of rents compare Stell v. Mayor and Aldermen of Jersey City, 95 N. J. L. 38, 111 Atl. 274.

446

Since it is clear that the city of St. Louis has no power under its present charter, nor by delegation from the state, to enact an ordinance controlling rents, we must hold the ordinance invalid as to its regulation of rents, and under the circumstances invalid as to evictions as well. Accordingly, we declare that plaintiffs are not affected by any of the provisions and restrictions of the ordinance in dealing with their tenants and lodgers, and the penalties of the ordinance may not be lawfully imposed under any condition.

It is so ordered. All concur.