CITY OF CAMDENTON, a Municipal Corporation, Respondent, v. SHO-ME POWER CORPORATION, a Corporation, Appellant, No. 41800—237 S. W. (2d) 94.

Division One, February 12, 1951.

Motion for Rehearing or to Transfer to Banc Overruled and Opinion Modified, March 12, 1951.

*Gregory C. Stockard* and *Sam S. Haley* for appellant.

*James P. Roach, Wayne W. Waldo* and *Claude T. Wood* for respondent.

[95]   HOLLINGSWORTH, J.—This action, brought by respondent, City of Camdenton, under the declaratory judgment act, seeks

an adjudication of the respective rights of respondent and appellant, Sho-Me Power Corporation, to own and operate an electric distribution system in the respondent city. Respondent alleged that all of the rights of appellant to maintain and operate such a system, presently owned and operated by it, would expire on the 7th day of September, 1951. Following an unsuccessful motion to dismiss, appellant joined issue on respondent's allegations, and further asserted and prayed a declaration that it had a perpetual right to so maintain and operate its system by virtue of its succession as assignee to a right so to do reserved by the dedicators of the streets and alleys of the original town of Camdenton. Appellant further alleged and prayed the court to declare that an existing contract between it and respondent gives it the right to furnish the city with street lights until June 25, 1955. The court found all of the issues in favor of respondent.

On the 4th day of December, 1930, one C. E. Webb and wife, being the owners of the Northeast Quarter of Section 25, Township 38, Range 17, in Camden County, executed a deed of dedication and plat of the original town of Camdenton, which was duly recorded on the same day. On that date the Town of Camdenton was a village and its area was within the quarter section so dedicated. The plat showed a detailed division into lots, blocks and streets and an area in the central part thereof designated "Camden Court". The deed recited: "The width and length of all roads and streets are as shown and are hereby dedicated to public use subject to the reservation that the grantors and their assigns shall have the right to locate, build, maintain and operate sewer, telephone, light and power lines, water mains, outlets and connections for the same, along, through or under Camden Court and all roads, streets and parkways in said town, which rights are not granted by this dedication." Through mesne conveyances, appellant acquired such utility rights as were reserved by the dedicators.

Respondent became a city of the fourth class on December 5, 1934. By additions from time to time attached to its original confines, it now extends over an area of approximately four times that of the original town. None of the added area is subject to any written reservation of public utility rights. Appellant contends, however, that by reason of its succession to the reservation in the plat and the sale of lots by dedicators and their grantees and the use of the streets shown on the plat by the public, respondent is estopped to deny the validity of the reservation, and that such right continues in perpetuity and is coextensive with the city.

[96] On September 8, 1931, the board of trustees of the Town of Camdenton, pursuant to an ordinance and an election held thereunder, granted an electric franchise to appellant's predecessor for a period of twenty years from September 8, 1931. This franchise is coextensive with the city and was duly assigned to appellant.

No question is raised as to its validity or that it will expire on September 7, 1951.

On the 26th day of June, 1945, the mayor and clerk of respondent, without the approval or consent of the qualified voters, entered into a written contract whereby appellant was granted the right to own, operate and maintain an electric system for lighting the streets of the city for a period of ten years. As stated, respondent challenged the validity of this contract and asserted that in no event can it lawfully extend beyond the expiration date of the twenty year franchise, to-wit, September 7, 1951.

Sometime prior to April, 1947, respondent initiated a plan to purchase or construct and to operate an electric distribution system of its own upon termination of the twenty year franchise under which appellant operated. Pursuant to ordinance and an election held in accordance with its provisions, the qualified voters of the city authorized the issuance of revenue bonds in the sum of $60,000 to finance the purchase or construction of its planned municipally owned system. The evidence shows this sum is sufficient for the purpose and that respondent will be able to put a municipally owned system into operation at the expiration of the twenty year franchise if, as respondent contends, it has the right to oust appellant from the city at that time.

Under the undisputed facts, as above stated, the court found that a present, existing controversy had developed at the date of the institution of this suit for determination under the declaratory judgment act; that appellant's motion to dismiss should be and was overruled; that all rights of appellant to use and occupy the streets and alleys of respondent would finally expire on September 7, 1951; that the action of the board of aldermen in attempting to bind respondent on the street lighting contract dated June 26, 1945, for any period extending beyond the 7th day of September, 1951, was ultra vires and void; and that the reservation in the deed of dedication was repugnant to and violative of public policy and the statutory powers conferred upon respondent to control its streets and alleys and, therefore, was void.

Appellant contends the allegation in respondent's petition that it "proposes, on the 7th day of September, 1951, or within a reasonable time thereafter, to oust defendant", in and of itself, reveals the action was prematurely brought, and that its motion to dismiss should have been sustained on that ground. Both appellant and respondent cite the case of City of Joplin v. Jasper County, 349 Mo. 441, 161 S. W. 2d 411, in support of their respective contentions. It holds (Loc. cit. 412): "The act furnishes a particularly appropriate method for the determination of controversies relative to the construction and validity of statutes and ordinances. * * * And it is an appropriate way of determining the powers

and duties of various govermental agencies * * * and even the duties of different governmental agencies with respect to the administration of public assistance. * * * But, when it is attempted to be so used and a judicial declaration is sought the court must be presented with a justiciable controversy—one appropriate for judicial determination—a case admitting of specific relief by way of a decree or judgment conclusive in character and determinative of the issues involved. * * * There must be a sufficiently complete state of facts presenting issues ripe for determination before a court may declare the law. 'A mere difference of opinion or disagreement or argument on a legal question affords inadequate ground for invoking the judicial power.' '' Appellant also cites State ex rel. Chilcutt v. Thatch, 359 Mo. 122, 221 S. W. 2d 172, which holds that the petition must present a real and substantial controversy admitting of specific relief through a decree of a conclusive character.

Such is the law in all actions under the declaratory judgment act. Therefore, does a present, substantial controversy exist [97] between respondent and appellant that admits of specific relief through a decree of a conclusive character? Respondent's plans have advanced to the point where there is nothing to prevent their completion other than the possibility that appellant might continue to operate an electric distribution system in the city. The fact that the voters authorized the issuance of $60,000 of revenue bonds and that they are adequate in amount shows respondent is able, willing and committed to finally consummate the plan. If respondent's contention is sound, and if it must wait until September 7, 1951, before it can maintain this action, then it will lose precious time in the completion of its plans. In the meantime, the city and its inhabitants would be without electricity unless appellant will agree to remain as a licensee until respondent acquires or constructs a distribution system. It is further apparent that respondent would be embarrassed in finding a market for its bonds, if, indeed, it would not be impossible, until this question is settled. The act provides (§ 1128, Mo. R. S. A. 1939, § 527.030, Mo. R. S. 1949) that a contract may be construed either before or after there has been a breach thereof, and the second section (§ 1127, § 527.020) specifically authorizes the maintenance of this action. One of its purposes is to afford a means of forestalling the possibility of such untoward eventualities as these. See City of Nevada v. Welty, 356 Mo. 734, 203 S. W. 2d 459. We rule this contention against appellant.

Appellant contends further that its motion to dismiss should have been sustained for the reason that the act (§ 1136, § 527.110) provides that all persons shall be made parties who have or claim any interest which would be affected by the declaration, and that the reservation upon which it relies refers to rights to operate sewer, telephone and

water systems in addition to the franchise granted its predecessor, and that the interests of such parties claiming these other utility rights will be greatly affected by the judgment rendered in this case. This contention is without merit. There is no evidence whatever that any one is asserting any right under the reservation other than appellant.

Appellant contends the court erred in declaring that "the attempt of the dedicators in the plat of the original town of Camdenton, to reserve control over the utility rights in the streets * * *, and the subsequent mesne conveyances of such purported rights" were illegal and void. Five cases are cited in support thereof.

In Canda Realty Co. v. Borough of Carteret, 136 N. J. Eq. 550, 42 A. 2d 859, the dedicators reserved a right to maintain and operate sewers and other utilities. Following acceptance of the dedication in 1903, it constructed a system of sewers in certain of the streets dedicated to the city. Twenty-two years later these sewers had become inadequate and in 1926 the city, pursuant to ordinance, adopted a plan for a comprehensive sewage system which connected with the Canda sewer at certain points. Apparently the Canda Company acquiesced for some eighteen years in the integration of these sewer systems and then brought a suit to enjoin the city from its alleged trespass. The court denied the injunction. This case furnishes no basis for appellant's contention.

In Gwin v. City of Greenwood, 150 Miss. 656, 115 So. 890, it was held permissible for an owner of land in a rural section to reserve utility rights in a deed dedicating certain portions of his land for streets and alleys. In the course of its opinion, the court said, "* * * we are not called upon to decide what effect the reservation made by the original owners in laying off said addition would have amounted to, had said addition been within the corporate limits of an existing municipality. We deal here with the situation of a rural development, wherein the land was platted and laid off into lots, and these lots sold to persons with reservations contained in their deeds * * *." Clearly, it is not in point.

The case of Ferguson Seed Farms v. Ft. Worth Ry. Co. (a Texas case), 69 S. W. 2d 223, dealt with a reservation of rights and franchises to operate railroads [98] and public utilities in the streets of a city. The suit was instituted by plaintiff, however, to recover damages from a railway company to a cotton gin by reason of construction of spur tracks over a street in the city. The rights of the city were not adjudicated.

In Brown v. City of Carthage, 128 Mo. 10, 30 S. W. 312, the owner of land sought to annul the city's right to certain streets and as one of its grounds asserted that the reservation in the plat of the "trees and rocks" on the surface of the streets and alleys voided the dedica-

tion. The court held to the contrary. The facts are not comparable to the question here involved.

In Snoddy v. Bolen, 122 Mo. 479, 25 S. W. 932, there was a controversy between individuals as to the ownership of minerals underlying certain streets dedicated to the city. The rights of the city were not involved.

The general rule is that a dedicator cannot attach conditions or limitations inconsistent with the legal character of the dedication, or contrary to public policy, or which exclude public control of the property, but if he does so, the dedication is otherwise valid. 26 C. J. S., Dedication, § 31, p. 91; 18 C. J., Dedication, § 64, p. 71.

In the case of Village of Grosse Pointe Shores v. Ayres, 254 Mich. 58, 64, 65, 235 N. W. 829, 831, the court said: "The dedication of property for the purpose of a highway carries the right to public travel and also the use for all present and future agencies commonly adopted by public authority for the benefit of the people, such as sewer, water, gas, lighting, and telephone systems. * * * A condition in a deed of dedication prohibiting the uses above stated or circumscribing the future freedom of action of the authorities to devote the street to the wants and convenience of the public is void, as against public policy or as inconsistent with the grant." See also Kuehn v. Village of Mahtomedi, 292 N. W. 187.

In the case of City of St. Louis v. Koch, 335 Mo. 991, 74 S. W. 2d 622, 624, it was held: "The Company does not contend for a reservation out of land dedicated for street purposes. It claims absolute ownership of the strip. If it granted the strip for street purposes, there would be no damage to reserve. An attempt to thus reserve damage would be inconsistent with the grant and must fail."

The rule as stated in the texts and cases above cited is in accord with the scheme of regulation of utilities by municipalities in Missouri. Any other rule would be inconsistent therewith. " 'The rule must be considered settled, that no person can acquire a right to make a special or exceptional use of a public highway, not common to all the citizens of the state, except by grant from the sovereign power.' * * * The power to grant franchises resides in the state, and a city, in granting a franchise, acts as agent for the state." State ex inf. Shartel, ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S. W. 2d 394. "Although such franchise must in the final analysis come from the state, it may be granted by a municipality within the scope of its charter as the agent of the state." State ex inf. McKittrick, ex rel. City of Springfield v. Springfield City Water Co., 345 Mo. 6, 131 S. W. 2d 525, 530. The public has an easement in its public streets and the city holds title to such easement in trust for its use. Stout v. Frick et al., 333 Mo. 826, 62 S. W. 2d 1057, 1058.

Neither a village, such as was respondent prior to December 5, 1934, nor a city of the fourth class, such as is the respondent since that

date, is authorized by charter to grant a franchise for a period of more than twenty years. In villages, such authorization must be by ordinance. Sec. 7828, Mo. R. S. A. 1939 (§ 71.520, Mo. R. S. 1949). In cities of the fourth class, such authorization must have the consent of a majority of the qualified voters, voting at an election held for that purpose. Sec. 7178, Mo. R. S. A., as amended, Laws 1945, p. 1274 (§ 88.770, Mo. R. S. 1949).

It is inconceivable that the board of trustees of respondent when it was a village or the board of aldermen of respondent after it became a city of the [99] fourth class, with the charter limitations aforesaid, could bind the public to a perpetual easement on its streets by the acceptance of a dedicatory plat and deed containing the reservation here under consideration.

It is sufficient answer to appellant's plea of estoppel that neither appellant nor its predecessors occupied or used the streets by virtue of any rights granted them under the reservation. Both appellant and its predecessors have at all times operated under the franchise expiring September 7, 1951, and the street lighting contract dated June 26, 1945. It might well be held that by the acceptance of the franchise and the street lighting contract appellant and its predecessors abandoned any rights they may have asserted under the reservation, but we do not rule the case on that ground.

Appellant finally contends that the court erred in holding that the attempt to bind respondent on the street lighting contract, dated June 26, 1945, for any period extending beyond the 7th day of September, 1951, was ultra vires and void. This contention is based upon the provisions of Sec. 7178, Mo. R. S. A., as amended, Laws 1945, p. 1274 (§ 88.770, Mo. R. S. 1949). This section is applicable to cities of the fourth class. Insofar as pertinent, it provides, in substance, that street lighting contracts shall not be made for a longer time than ten years and must be ratified by the vote of a two-thirds majority of the qualified voters; and that franchises for supplying private lights for the use of the inhabitants shall not be granted for a longer time than twenty years and must be ratified by the vote of a majority of the qualified voters. Then follows the further provision upon which appellant relies, to-wit: "* * * that nothing herein contained shall be so construed as to prevent the board of aldermen from contracting with any person, persons or corporation for furnishing the city with gas or electric lights in cities where franchises have already been granted, and where gas or electric light plants already exist, without a vote of the people; * * *".

The case of City of Campbell, Mo., v. Arkansas-Missouri Power Co., 55 Fed. 2d 560, cited by appellant, held that under the proviso above quoted the street lighting contract there in question was not illegal because the contract was not ratified by the voters nor authorized by ordinance. In that case, the City of Campbell had granted a

twenty year franchise for the supplying of private lights in January, 1915. On May 12, 1925, the city entered into a contract with the utility for lighting its streets for a period of ten years. No question was raised that the contract was invalid because it extended for a period of some four months beyond the expiration date of the twenty year franchise. It is not decisive of the question here involved.

In the first place, the contract of June 26, 1945, does not show on its face that its execution by the mayor and city clerk was authorized by the board of aldermen. But, assuming that such authorization was given, we think it is not enforceable beyond the expiration date of the twenty year franchise. Only evil results could flow from such a construction of the statute. If we were to so hold, the board of aldermen at a time near the expiration of an existing franchise could enter into a contract for street lighting to extend substantially ten years after the expiration of the franchise. Undoubtedly, such a contract would so hamstring the city that it could not finance a municipally owned plant or negotiate to any advantage with either the utility whose franchise had expired or any other utility. We cannot believe the Legislature intended by this proviso to authorize the board of aldermen to enter into street lighting contracts beyond the expiration date of an existing franchise without the consent of a two-thirds majority of the polled voters.

In view of the conclusions above reached, it is unnecessary to determine a further contention made by respondent that the street lighting contract is void by virtue of the provisions of Section 71.530, Mo. R. S. 1949.

The judgment of the trial court is affirmed. All concur.