W. E. GLIDEWELL, O. J. Jones, Individually and for and on Behalf of all Members of Local Union 453 of the International Brotherhood of Electrical Workers, L. G. DeCamp and Louis O'Neal, Individually and for and on Behalf of All Members of 591 of Springfield, Missouri, of the Amalgamated Association of Street, Electric Railways and Motor Coach Employees of America, Plaintiffs-Appellants,

v.

George K. HUGHEY, Dorsey Heer, C. Frank Knox, Herman Powell, Peyton Enloe, Frank Clark, Herman Cox, David C. Scott and J. V. Cloud, Members of and Constituting the Board of Public Utilities of the City of Springfield, Missouri, Daniel C. Rogers, G. H. Frieling, Albert Fults, Carl L. Spaid and John A. White, Members of and Constituting the Missouri State Board of Mediation, John M. Dalton, Attorney General of the State of Missouri, Phil M. Donnelly, Governor of the State of Missouri, and The City of Springfield, Missouri, a Municipal Corporation, Defendants-Appellants.

No. 45972.

Supreme Court of Missouri,
En Banc

July 14, 1958.

Walker, Daniel, Clampett & Rittershouse, B. H. Clampett, Springfield, for plaintiffs-appellants.

J. Weston Miller, Mayte B. Hardie, Miller, Fairman & Sanford, Springfield, for George K. Hughey et al., Members of Board of Public Utilities of City of Springfield, Mo., and City of Springfield, Mo.

HYDE, Judge.

Declaratory judgment action by plaintiffs, representing labor unions, for declarations as to the rights of the parties under Art. 16 of the Charter of the City of Springfield; that unions have the right to enter into collective bargaining agreements with the Board of Public Utilities of the city respecting wages, hours and working conditions, as set forth in certain proposed contracts; and that the State Board of Mediation has jurisdiction to furnish mediation services in any labor disputes that might arise between the unions and the Board. The court entered judgment making some declarations favorable to plaintiffs' contentions but declaring that the Board did not have the right to enter into the proposed contracts; and both plaintiffs and defendants have appealed.

The case was tried on an agreed statement of facts, and some other evidence, including proposed contracts submitted to the Board by the unions, the Constitution

and By-Laws of the unions, membership applications and obligations of union members and the new Charter of the city. The City of Springfield adopted its own charter on March 17, 1953, in accordance with the provisions of § 19, Art. VI, 1945 Constitution, V.A.M.S. Prior to that time, it had been a city of the second class and had acquired an electrical generating and distribution system and a bus transportation system, which were operated by a Board of Public Utilities under authority of §§ 91.330–91.-440. (Statutory references are to RSMo. and V.A.M.S.) Prior to the adoption of the charter, and after our decision in State ex rel. Moore v. Julian, 359 Mo. 539, 222 S.W.2d 720, concerning the applicability of the King-Thompson Act to cities of the second class, the former Board, operating under §§ 91.330–91.440, made collective bargaining agreements with the unions concerning wages, hours and working conditions. After the adoption of the charter, the city notified the unions that it considered it had no legal authority to enter into such contracts and that the State Board of Mediation had no jurisdiction over it.

The judgment entered made the following declarations:

"1. Defendants George K. Hughey, Dorsey Heer, Herman Cox, Herman Powell, C. Frank Knox, Frank Clark, Peyton Enloe, David C. Scott and J. V. Cloud, members of the Board of Public Utilities of Springfield, Mo., are agents of the said City entrusted with the duty and clothed with the power to operate the utilities owned by the said City, and as such are proper parties to this action since their powers and duties are affected by this judgment.

"2. The King-Thompson Act, Chapter 295, R.S.1949, is a valid legislative enactment of the State, and applies to public utilities municipally owned as well as those privately owned.

"3. The State Board of Mediation, created by said King-Thompson Act has jurisdiction to use its mediation services in labor disputes between the Board of Public Utilities of the said City and its employees.

"4. By an Act of 1945, Secs. 91.330 to 91.440 R.S.1949, the State effected a separation of governmental and proprietary functions of cities of the second class, which then included the City of Springfield, and provided that as to such cities the operation of municipally owned utilities was a proprietary function.

"5. The charter of the said City, adopted March 17, 1953, by popular vote did not materially alter the status of the City Utilities of Springfield as a proprietary function of the City.

"6. Under the laws of the State and the said charter of the City of Springfield the said City, acting through its Board of Public Utilities, has the power to enter into collective bargaining agreements with its employees operating said Utilities relating to wages, hours and working conditions, subject to certain limitations hereinafter mentioned.

"7. Under said charter, employees of the Utilities can be hired, promoted, reduced or discharged only in accordance with rules established by the Board. Therefore, the said Board of Public Utilities cannot enter into such agreements providing:

"A. A closed shop, or the employment of only members of a labor union, or a requirement that employees join a union, or that employees shall not join a union.

"B. That employees be promoted, demoted, laid off, reemployed or discharged according to seniority or any other form of favoritism.

"C. Approval by a union or any board or committee of a union as a prerequisite to the employment or promotion of any person.

"D. Recognition of a labor union as the sole bargaining agent for all of the employees of said Board, but may bargain with a union as agent for such employees as have chosen the union as their bargaining representative.

"8. For the foregoing reasons the Board of Public Utilities of said City does not have the right to enter into agreements as

set forth in exhibits A and B attached to plaintiffs' second amended petition."

We have jurisdiction because this appeal involves the construction of § 29, Art. 1, Constitution, and the constitutionality of the King-Thompson Act, Chapter 295, §§ 295.010–295.210. State officers also are parties.

Before reaching the merits, it is necessary to consider defendants' contention that the members of the Board are not proper parties to this action. Defendants say this is true because the Board does not have power or capacity to sue or be sued as such and the individuals who constitute the Board at any time cannot in their individual capacities bind the Board or the city. It is true, of course, that the city is the real party and the necessary party defendant; and, as defendants say, citing 64 C.J.S. Municipal Corporations § 2195, p. 1034, and McQuillin, Municipal Corporations, 3d Ed., § 49.16, suits against a municipal corporation should be in its corporate name and not against its officers, corporate authorities or the individuals composing them. However, that does not mean that the individual members of the Board are not proper parties in a declaratory judgment suit in which the city is made a party. See 39 Am.Jur. 853, § 5, also p. 889, § 27; 67 C.J.S. Parties § 1, p. 889; Brotherhood of Stationary Engineers v. City of St. Louis, Mo.App., 212 S.W.2d 454, 458; Durwood v. Dubinsky, Mo.Sup., 291 S.W.2d 909. Section 507.040(1) (which is the same as Federal Rules of Civil Procedure, rule 20, 28 U.S.C.A.) gives broad authority for permissive joinder of defendants; and it was intended to extend to all civil actions the principles of permissive joinder which had been followed in equity. See also § 527.110. This authority should be liberally construed in a declaratory judgment suit, which has its historical affinity in equity, and with which may be heard claims for affirmative equitable relief. (See Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S.W.2d 945, 125 A.L.R. 1149; Union National Bank v. Jessell, 358 Mo. 467, 215 S.W.2d 474.) Therefore, in view of the duties imposed upon the members of the Board by the city charter and the equitable remedies that would be available against them in connection with this action, we hold they were proper parties.

On the merits, plaintiffs say the court's declarations were correct concerning the validity and applicability of the King-Thompson Act and the separation of the governmental and proprietary functions, with authority to make collective bargaining contracts, but contend the court erroneously declared the Board's power to so contract was limited to the extent stated in paragraph 7, and in subparagraphs A to D thereof, and in paragraph 8. Defendants say the declaration in paragraph 8, that the Board does not have the right to enter into the specified proposed agreements, is correct but that the court erred in making every other declaration and also contend that all the other declarations are merely advisory in character as to abstract matters without the purview of the Declaratory Judgment Act. We think more is presented here than merely the authority to enter into the two specified proposed contracts because the city contends it has no authority to make any contract with plaintiffs about wages, hours, and working conditions and plaintiffs seek a declaration of the rights of the parties to make such contracts under § 16 of the city's charter. We hold there is a justiciable controversy between the unions and the city as to the authority of its Board to enter into collective bargaining contracts relating to wages, hours and working conditions, the validity and applicability of the King-Thompson Act to the public utilities owned by the city and the jurisdiction of the State Board of Mediation in connection with their operation. See City of Nevada v. Welty, 356 Mo. 734, 203 S.W.2d 459; City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539; King v. Priest, 357 Mo. 68, 206 S.W.2d 547; Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70; City of Camdenton v. Sho-Me Power Corp., Mo.Sup., 237 S.W.2d 94. The authority of the city, as a city of the second class, "to make collective bargaining con-

tracts, with labor unions representing city employees, concerning wages, hours, collection of union dues, and working conditions" [356 Mo. 1239, 206 S.W.2d 541], was the issue in the Clouse case. We have the same issue here concerning the authority of the city under its constitutional special charter but the effect of the King-Thompson Act (adopted after the Clouse case arose) must also be considered in determining it. The controversy would not be settled by merely deciding that the city did not have authority to make the two specified proposed contracts because the real issue is whether or not, under the city's present charter, wages, hours and working conditions of city employees in its electric and transportation systems can be a matter of bargaining and contract to any extent at all. In the Tietjens case the justiciable controversy was the authority of the City of St. Louis to control the rental of property; here it is authority of the City of Springfield to enter into contracts fixing wages, hours and working conditions of city employees. Section 527.020 provides for a declaration of rights, status or other legal relations under any instrument, statute, ordinance, contract or franchise. Certainly the rights, liabilities, duties and obligations of the parties under the city's charter, with respect to the matters herein involved, are within this authority; and we, therefore, hold that an actual controversy exists about them between the parties hereto whose interests concerning them we find to be adverse in fact.

Plaintiffs rely on State ex rel. Moore v. Julian, supra, but what we held there, 222 S.W.2d loc. cit. 725, was that the mediation provisions of the King-Thompson Act must be construed as applying to labor disputes in municipally owned public utilities in cities of the second class. Of course, that ruling was based on the view expressed in the Clouse case, 206 S.W.2d loc. cit. 546, that the Legislature might separate corporate functions, and employees engaged therein, and provide for their operation and management in some manner distinctly

apart from other city functions so that employer and employee relations could be handled on a basis similar to private industry; and it was considered that the Act of 1945 (Laws 1945, p. 1270, now §§ 91.330–91.440) had made a sufficient separation to make the King-Thompson Act applicable. However, the City of Springfield was not a party to the Julian case and the extent of its authority to make any collective bargaining contracts at that time was not directly raised or decided; nor was the validity of the 1945 Act as authority for such contracts considered. The decision as to the authority of the State Board of Mediation in second class cities was based upon both acts construed together. In any event, that case does not pass upon and is not controlling in determining the authority of the city under its present charter to engage in bargaining with its employees. Therefore, we will consider the situation presented by the new charter.

■ The charter provides for a "council-manager government" and that "all powers of the city shall be vested in an elective council", subject only to limitations of the State Constitution and the charter, "which shall enact local legislation, adopt budgets, determine policies, and appoint the City Manager." (1.2) Among the specifically stated powers of the Council to act by ordinance are: "purchase, hire, lease, construct, own, maintain, and operate public utilities" (2.16[2]); "contract and be contracted with, and sue and be sued" (2.16 [25]); "establish and enforce gas, electric and public transportation rates, and rates and charges for all other utilities owned and operated or services furnished by the City" (2.16 [31]); and "provide for all personnel necessary to carry on the function of all departments and agencies of the City." (2.16 [38]) The Charter also provided: "Except as specifically otherwise authorized or provided in this charter all Boards, Departments and Agencies of the City shall be subject to legislative control of the City Council." (15.4) The Charter in Article 16 further provided: "public utilities now owned

or which may in the future be acquired, shall be controlled and operated by a Board known as the Board of Public Utilities" (16.2 [1]); and provided for a Board of nine members (16.2[2]) nominated by the Mayor and approved by a majority vote of the Council. (16.3) The duties of the Board were "to take charge of and exercise control over any public utilities now owned or operated by or hereafter acquired by the city and all extensions thereof and the appurtenances thereto belonging, and with the right and power to establish, maintain and operate such park and recreation areas and facilities in the manner and as the Board may determine, with plans for the development of parks and recreational areas having first been submitted to and approved by the City Council, upon real estate and properties acquired or held in connection with utilities as a part of said utilities operations." (16.6) Among the powers of the Board were "to hire such persons in the manner herein provided as are necessary to operate the said utilities, to agree upon or provide the terms of their compensation, to discharge the same." (16.7) The manner referred to was thus stated (16.14): "The said Board shall appoint and may remove the manager; who may, with the approval of the Board, appoint and remove his assistants and the heads of departments; all other employees shall be hired, promoted, reduced or discharged in accordance with rules established by the Board designed to secure and retain employees strictly on the basis of their merit and without regard to favoritism. The Board shall determine the duties and compensation of all employees. No individual member of the said Board shall request or recommend the employment retention, promotion, reduction, retardation or discharge of any employee and such request or recommendation shall be sufficient cause for removal of such Board member from office."

Other provisions concerning control of the Council are that obsolete or surplus property may be sold or disposed of by the Board "in the manner provided by ordinances for the disposition of such property by the City" (16.6); that the Board must

prepare and submit to the Council, not less than 30 days prior to the end of the fiscal year, a budget showing its estimated revenue and expenditures for the coming year, the Council having power to reduce or delete items of expenditures (16.8); that approval of the budget by the Council "shall be deemed to be an appropriation of the money authorized for disbursement thereby" (16.9); that records of receipts and disbursements be furnished to the City Director of Finance and be open to inspection of the Council at any time, with quarterly reports of its transactions to the Council (16.11); that purchases be made in accordance with rules made by the Board, approved by the Council, but "in such manner as to take advantage of the combined purchasing power of the City as a whole wherever practicable" (16.12); that rates shall be fixed by the Board subject to the approval of the Council (16.13); and that the Board and Council "shall have joint authority and control over the reserves and funds of such utilities as are not required to pay the usual and proper costs of operation, depreciation," etc. requiring a two-thirds vote of the Council and Board in joint session for action if the Council does not approve the Board's recommendations. (16.16) Finally it was provided (19.21): "Any Board established by the provisions of this Charter may be abolished and the facilities, powers and duties of said Board transferred to a department of the City Government either then existing or to be established by the City Council for the assumption thereof, upon the two-thirds majority vote of the total membership of the City Council and the Board being abolished meeting in joint session."

It seems apparent from these charter provisions that there is no separation of the corporate functions of the city concerning its public utilities and employees engaged therein with provisions for their operation in a manner distinctly apart from other city functions. On the contrary, these utilities and the employees engaged therein are clearly subject to and regulated by the exercise of the legislative powers of the city. Not only does the City Council have the

final decision on the utilities budget, rates and disbursements but the Board may even be abolished and its facilities, powers and duties transferred to a department either then existing or to be established by the City Council. It is true that the members of the Board have a vote on the matter of abolishment in a joint meeting with the Council and that a two-thirds vote of the joint meeting is required for this purpose. (This is also required for certain uses of reserves and funds.) Thus the members of the Board are made in effect ex officio members of the Council for certain matters upon which they may vote. This is certainly the exact opposite of the kind of separation referred to as required in the Clouse and Julian cases and shows that the regulation and control of utilities is wholly within the legislative powers of the city. Instead of being set up in the nature of a separate municipal corporation with power to sue and be sued (which is not granted) the Board is only an administrative body or department of the City Government, with certain legislative powers delegated to it by the Charter with reference to employees (as hereinafter shown) and with its members being part of the legislative department of the city for certain purposes. It may be noted also that the Board has functions concerning and control over establishment and operation of parks and recreation areas, which has to some extent been held to be a governmental function. 63 C.J.S. Municipal Corporations § 907, p. 317, § 1057, p. 686. This authority also is subject to the action and approval of the Council.

The Charter provision as to employees is very different from the one in the statute considered in the Julian case, 222 S.W.2d loc. cit. 722, under which employees served only during the pleasure of the Board. The Charter provision (16.14) is that "employees shall be hired, promoted, reduced or discharged in accordance with rules established by the Board designed to secure and retain employees strictly on the basis of their merit and without regard to favoritism." This is a delegation of legislative power by the Charter to the Board to set up a merit system of employment, separate from the merit system provided by the Charter (6.5, 6.6) for other city employees in its classified service. It is specified that this is to be done by "rules established by the Board" and the Board has no authority to do it in any other way, certainly not to contract away this authority. If this duty is legislative, it cannot become a matter of bargaining and contract. City of Springfield v. Clouse, supra, 206 S.W.2d loc. cit. 545; see also City of Los Angeles v. Los Angeles Building & Construction Trades Council, 94 Cal.App.2d 36, 210 P.2d 305; Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445, 26 So.2d 194, 165 A.L.R. 967; Mugford v. Mayor and City Council of Baltimore, 185 Md. 266, 44 A.2d 745, 162 A.L.R. 1101; City of Detroit v. Division 26 of Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees, 332 Mich. 237, 51 N.W.2d 228; New York City Transit Authority v. Loos, 2 Misc.2d 733, 154 N.Y.S.2d 209; City of Cleveland v. Division 268 of Amalgamated Ass'n of Street & Electric Railway & Motor Coach Employees, Ohio Com.Pl., 90 N.E.2d 711; Weakley County Municipal Electric System v. Vick, (Tenn.), 309 S.W.2d 792; McQuillin Municipal Corporations § 12.140. As said in the Los Angeles case, 210 P.2d loc. cit. 311, "to hold to the contrary would be to sanction government by contract instead of government by law." Upon consideration of the Charter as a whole, we think the matter of qualifications, tenure, compensation and working conditions in this public service involves the exercise of legislative powers. The City Council controls the amounts available for compensation by its authority over the rates, budget and appropriations. The Board has authority only to establish and follow merit system rules. The Legislative Department of the city even has the ultimate power to abolish the Board and have its functions transferred to another department of the city government then existing or established by the Council for that purpose. It is a familiar principle of constitutional law that no legislature can bind itself or its successor

to make or continue any legislative act. As we held in the Clouse case, § 29, Art. I, Constitution, does not confer any collective bargaining rights upon public officers or employees in their relations with municipal government and we hold that it is not applicable to the situation in this case because there is no such separation of the public utilities of the city from its general governmental functions and legislative powers as would be required to make it applicable. Therefore, our conclusion is that under the present charter of the city the whole matter of qualifications, tenure, compensation and working conditions in the city's public utilities involves the exercise of legislative powers and cannot become a matter of bargaining and contract.

■ As to the jurisdiction of the State Board of Mediation, we think it must be held that it has no jurisdiction in municipalities in which there is no separation of municipally owned public utilities with provision for their operation in some manner distinctly apart from other city functions so that their employer and employee relations could be handled on a basis similar to private industry. That is the construction we place on the Julian case and we think must follow from our construction of § 29, Art. I, Constitution. Therefore, we hold that where, as here, the whole matter of qualifications, tenure, compensation and working conditions in the city's public utilities involves the exercise of the city's legislative powers, so that these matters cannot become a matter of bargaining and contract, then the King-Thompson Act is not applicable and the State Board of Mediation is without jurisdiction. Since we hold the King-Thompson Act is not applicable in this case, the questions raised herein as to its constitutionality become moot questions in this case and, therefore, will not be considered herein.

The judgment and decree of the Court is affirmed as to declarations 1 and 8 and reversed as to all other declarations and the cause is remanded with directions to make new declarations in lieu of declarations 2 to 7, inclusive, in accordance with the views herein expressed.

All concur.