Genevieve S. McDERMOTT, Plaintiff-
Respondent,

v.

VILLAGE OF CALVERTON PARK, Virgil
Syberg, George Barbero, Arthur Quillo,
Joseph Gordon, Charles Myles, Jean Poro-
pat, Lowell Girardier and C. S. Lafferty,
Defendants-Appellants.

No. 33335.

St. Louis Court of Appeals.

Missouri.

Nov. 18, 1969.

John J. Gerst, David D. Weltner, St. Louis, for defendants-appellants.

Slonim & Ross, Clayton, for plaintiff-respondent.

DOERNER, Commissioner.

This is a declaratory judgment suit in which P. Joseph McDermott and Genevieve S. McDermott, his wife, as owners by the entirety of a tract of land in the Village of Calverton Park, St. Louis County, sought to have the court declare the Village's general zoning ordinance invalid. The individual defendants are members of the Village's Board of Trustees and other municipal officials. Judgment below was for the McDermotts, and this appeal followed. After the appeal had been taken Mr. McDermott died, and thus Mrs. McDermott appears as the sole plaintiff-respondent.

In their petition the McDermotts directed a three-pronged attack on the constitutionality and the validity of the Village's zoning ordinance, Ordinance No. 77. That ordinance, while it divided the municipality into four districts, restricted the use of land and buildings in all such districts to one-family dwellings, save for public parks and other uses not here material. Relying in the main on the decision of the Supreme Court in City of Moline Acres v. Heidbreder, Mo., 367 S.W.2d 568, the trial court held that under our zoning enabling statutes, §§ 89.010 to 89.140, inclusive, RSMo 1959, V.A.M.S., the Village did not have the statutory power and authority to adopt a zoning ordinance which restricted the use of all land and buildings to one-family

dwellings, and declared Ordinance No. 77 invalid. Defendants' appeal followed.

■ Because a question as to our jurisdiction was raised during oral argument we note, in passing, that here, as in State ex rel. Town of Olivette v. American Telephone and Telegraph Company, Mo., 273 S.W.2d 286, the trial court did not pass on or determine any question involving the constitutionality of the ordinance. In fact, it has been indicated that the questions here raised regarding the constitutionality of the ordinance involve the *application,* rather than the *construction,* of the Federal and State Constitutions. Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833; Wrigley Properties, Inc. v. City of Ladue, Mo., 369 S.W.2d 397. Nor does the evidence show the amount in dispute with that degree of certainty and definiteness required to invest the Supreme Court with jurisdiction, as in Huttig and Wrigley Properties. Plaintiff's witnesses testified that the value of the tract would be from $55,000 to $65,000 for commercial use. All that was shown as to the value for residential purposes was that plaintiff's residence and the two lots on which it was situated were worth from $16,500 to $17,000; but there was no evidence as to the value for residential purposes of the remaining 17 vacant lots comprising the remainder of plaintiff's tract. Thus the precise amount in dispute remains a matter for conjecture. In light of the foregoing we are of the opinion that this court properly has jurisdiction of the appeal.

Plaintiff's property comprises about 2½ acres, and fronts 280 feet on the west side of North Florissant Road between Connolly Drive and Barto Drive, in the Village of Calverton Park. It was subdivided into 19 lots in 1925. The McDermotts acquired the tract in June, 1946. On January 15, 1953, the Village adopted Ordinance No. 77. As stated, the use of the land and buildings in all of the four districts into which the municipality is thereby divided is restricted by the ordinance to one-family dwellings,

the differences in the zoning districts being the size of the lots, building lines, and building materials. On January 8, 1963, the McDermotts entered into a contract for the sale of their property to Larry Witzer or assigns for $58,500, conditioned upon the rezoning of the tract for the commercial use of the property as a shopping center, "at the expense of the seller"; and the procurement of all necessary building permits, based upon the purchaser's plans, which "shall be obtained by buyer at his expense." Thereafter, on May 27, 1967, the McDermotts as owners and William Goodman as their real estate agent filed with the Village an application for a change of zoning. The Board of Trustees of the Village denied the application on September 23, 1963. On January 21, 1964, the McDermotts filed with the Village's Building Commissioner an application for a building permit for the construction of a shopping center on their property, accompanied by a set of plans, which application the Building Commissioner denied. This action followed, instituted by the McDermotts on February 8, 1964.

■ During cross-examination of Mr. McDermott he testified that he and his wife never intended to build a shopping center, and that they had applied for a building permit so that "our contractor" could build the center and the sale of their land be consummated. It also appeared in evidence that Larry Witzer, named as purchaser in the sales contract, was a straw party for one Irving Olian, a real estate developer, who desired to build the shopping center. From this defendants argue that the court should have sustained their motion for a directed verdict, or granted defendant a new trial, first, because the McDermotts were not the real parties in interest since they never intended to build a shopping center; and second, because, in defendants' words, "There was no present justiciable controversy over a direct protectable interest of plaintiffs-respondents, but only a hypothetical question seeking an advisory opinion on some possible future transaction." The fact that the McDer-

motts did not intend to build a shopping center on their land is immaterial. The gravamen of the McDermott's action is the alleged invalidity of Ordinance No. 77, which restricted the use of their land to one-family dwellings. Unless that ordinance was judicially declared invalid they were prevented from closing the contract for the sale of their property. As the owners of their property they were entitled to contest the validity of that ordinance, irrespective of whether they themselves intended to build a shopping center. That is precisely the course followed by the plaintiffs in Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833, and by the defendants in City of Moline Acres v. Heidbreder, Mo., 367 S.W.2d 568. As to the second part of defendants' argument, the Declaratory Judgment Act expressly provides for testing the validity of a statute or an ordinance. Section 527.020, RSMo 1959, V.A.M.S. Furthermore, the purpose of the McDermott's action was not merely to obtain an advisory opinion as to the validity of Ordinance No. 77, but to enable them to consummate a sale of their land for commercial purposes, at an advantageous price. The argument advanced by defendants was rejected in Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70. And see Gem Stores, Inc. v. O'Brien, Mo., 374 S.W.2d 109. We find no merit in defendants' contentions.

The decisive issue presented in this appeal is whether the result to be here reached is governed and controlled by the Supreme Court's decision in City of Moline Acres v. Heidbreder, supra. In that case the City in 1950 had enacted a zoning ordinance by which the City placed all of the land in a single district and restricted the use thereof to one-family dwellings. Defendants purchased a nearly completed house in the City in 1953, which was planned and constructed for occupancy by two family units, one of eleven rooms and the other of four. In the beginning one unit was occupied by the defendants, and the other by Mrs. Heidbreder's parents. De-

fendants moved out in 1960, and thereafter the units were leased or rented to different families. After defendants failed to heed letters from the City complaining of defendant's violation of the zoning ordinance, the City instituted its action on March 20, 1967, by which it sought to enjoin the defendants from operating the two-family dwelling in the area zoned for single-family dwellings in violation of the ordinance. Defendants argued that the restriction of the whole of the City of Moline Acres to a single use district, namely single-family residences, was so arbitrary and unreasonable as to be violative of the due process clauses of the Federal and State Constitutions; that the ordinance was not adopted pursuant to a "comprehensive" plan as required by the zoning enabling act, and that the act did not authorize the adoption of such a plan; and that the City's action was barred by laches and estoppel.

The Supreme Court found it unnecessary to pass upon either the constitutional questions raised by the defendants, or the issues of laches and estoppel. Rather, it pointed to § 89.040 which requires that all zoning shall be made " * * * in accordance with a comprehensive plan * *," rejected the City's argument that a plan may be "comprehensive" even though it establishes only a one use district, and held (367 S.W.2d 573):

" * * * It is true that § 89.040 permits the consideration of the 'character of the district' and of its suitability for particular uses. We are of the view, however, that, considering these statutes as a whole, in context, and considering their aggregate purpose and intent, it was never intended thereby to give to a municipality the power to adopt a *one use district* zoning ordinance encompassing the whole town. * * *" (Emphasis the court's.)

And in a subsequent passage the Supreme Court said (367 S.W.2d 573) : " * * * we are dealing with *a lack of authority * *"* to establish a one-use district. (Emphasis the court's.)

Were this a case of first impression we would be inclined to the view that while § 89.040 requires that the regulations under a zoning ordinance must be made in accordance with a "comprehensive plan," that statutory requirement does not prohibit a municipality, under certain circumstances, from restricting the use of land in the municipality to a single use. For while that section requires the preparation of a comprehensive plan, it also states that such a plan must be:

"* * * designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. *Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout such municipality.*" (Emphasis supplied.)

It requires no great stretch of the imagination to conceive of a situation in which, reasonably considering the character of the entire community and its peculiar suitability for the particular use, as well as the conservation of the values of existing buildings and the encouragement of the most appropriate use of the land, a municipality would be justified in adopting a zoning ordinance restricting the use to one-family dwellings. In fact, precisely such a situation is presented in the present case, as well as prevailing in many other of the innumerable so-called "bedroom" municipalities which exist in St. Louis County. The uncontroverted evidence in the instant case shows that at the time Ordinance No. 77 was adopted in 1953 a very substantial portion of the entire Village had attained single-family residential development. No com-

mercial, industrial, or multiple-family property then existed in the Village, nor has there been any subsequent rezoning of any kind to permit any of such uses. So far as this record shows, no request for any rezoning has ever before been requested. Furthermore, the uncontroverted evidence supports the conclusion that adequate commercial and business facilities have always existed and are readily available in other areas and communities which touch the northern and southern perimeters of the Village of Calverton Park. Despite the apparent desire of the landowners in the municipality, as well as their elected officials, to preserve the particular use which they deem most suitable and appropriate, the obvious result of the trial court's judgment, if sustained, in effect will be to permit spot-zoning for commercial purposes, not only of plaintiff's property, but of all other unimproved property in the Village whose owners may decide to use it for commercial, industrial, or multiple-family purposes.

However, we have studied and re-studied what was said in City of Moline Acres, and can come to no other conclusion than that it was there flatly, unqualifiedly, and unequivocally held that under our zoning enabling act a municipality lacks the "power" and "authority" to adopt a zoning ordinance which restricts the use of land and buildings therein to a single purpose. And since that case is the last controlling decision on the subject it is, of course, our constitutional duty to follow it. Art. V, § 2, Mo.Const. 1945, V.A.M.S.

In view of the conclusiveness of the court's decision the defendants' efforts to distinguish the instant case from that of City of Moline Acres must be held to be unavailing. Defendants argue: (1) that in City of Moline Acres the ordinance there under consideration provided for only one district, whereas in the present case there are four; (2) that in City of Moline Acres no Zoning Commission had been appointed to prepare a plan, as required by § 89.070, whereas in the instant case such a Com-

mission had been appointed and the procedural steps as to public hearings were strictly followed; and (3), that in City of Moline Acres the municipality had subsequently rezoned certain areas for commercial use, whereas in the instant case the Village of Calverton Park had never rezoned any areas for such purposes. While it is true that here the Village was divided into four districts, rather than one, only one use, that of one-family dwellings, is permitted, and the basis of the court's opinion in City of Moline Acres was the invalidity of the ordinance providing for the limitation to one use, not one district. As to the second argument, the Supreme Court stated in City of Moline Acres that it did not quibble about the City's failure to comply with the procedural steps leading up to the passage of the ordinance, and that its decision was grounded on "a lack of authority" to enact a single-use ordinance. The same grounds of its decision is also a conclusive answer to the defendants' third effort to distinguish the impact of City of Moline Acres. For if a municipality lacks the power and authority, in the first instance, to enact a single-use zoning ordinance it is immaterial whether or not it subsequently rezoned any area for other purposes.

■ For the reasons stated we are constrained to and do affirm the judgment. However, because of the general interest and importance of the question involved, and for the purpose of re-examining the existing law, the cause is transferred to the Supreme Court.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed. However, because of general interest and importance of question involved and for purpose of reexamining existing law, cause transferred to Supreme Court.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.