TERRITORY OF OKLAHOMA on the relation of THE OKLA-
HOMA GAS & ELECTRIC COMPANY, a corporation, v. J.
E. DEWOLFE, THE PEOPLES GAS COMPANY, a corpora-
tion, AND A. F. BINNS.

(Filed September 10, 1903.)

1. PUBLIC ACTION—Who May Sue in Name of Territory. Where
the public are interested, and it is necessary to bring the action
in the name of the territory, such action can only be brought at
the instance of the public officer authorized by statute.

2. SAME. A private individual has no right to use the name of the
territory in bringing a civil action, except in case where special
authority is given by the statutes of this territory.

3. SAME. The bare allegation in a petition that the public officers
have refused to bring the action is not alone sufficient to author-
ize the use of the name of the territory by a private individual.

4. CITIES—Power to Grant Franchises. Cities in this territory have
not the power or right to. grant the exclusive franchise and priv-
ilege to the use of the streets and alleys for the erection of gas
or electric works, to any person, company, association or cor-
poration.

5. FRANCHISE—Adoption of—Notice. Failure to give notice to one
member of the council of a city of a special meeting at which
there was granted a franchise for the use of the streets and al-
leys for the erection of an electric and gas works and plant, is
cured by subsequent action of the mayor and council, while in
legal session, by the passage and adoption of an ordinance rati-
fying the ordinance granting the franchise, and extending the
time for the completion of the works and plant.

(Syllabus by the Court.)

Error from the District Court of Oklahoma County; before
B. F. Burwell, Trial Judge.

Howard & Ames, for plaintiff in error.

Hays & McMechan, for defendants in error.

Opinion of the court by

BEAUCHAMP, J.: The relator, plaintiff in error, com-
menced this action in the district court of Oklahoma county
by filing its petition entitled in the name of the "Territory

of Oklahoma," and on the relation of the Oklahoma Gas and Electric Company, for a permanent injunction to restrain defendants in error from laying gas pipes in the streets and alleys in Oklahoma City. Upon the filing of the petition, the judge of the district court, being absent from the county, application was made to the judge of the probate court for a temporary injunction as prayed in the petition; which was by the judge of the probate court granted without notice, and the plaintiff required to file a bond in the sum of $1,000. On the 20th day of August, 1902, the defendants filed a motion to dissolve the temporary injunction, and after notice thereof, on the 11th day of September the parties by their attorneys appeared before the judge of the district court of Oklahoma county at his chambers in Oklahoma City, and after hearing the evidence, which was in the form of affidavits and documentary evidence, the motion to dissolve was sustained, and the temporary injunction granted by the probate judge dissolved, to which order the plaintiff excepted; time was fixed for appeal and the order suspended pending appeal to this court. The motion to dissolve was made upon several grounds, but it will only be necessary to consider the first and second, which raise all the questions necessary to notice for the purposes of this appeal, and which read as follows:

"First. That said plaintiffs have no legal capacity to bring said suit in the name of the Territory of Oklahoma, for the reason that said relator is neither the county attorney of Oklahoma county, Oklahoma Territory, or the attorney general of Oklahoma Territory, and no allegations of sufficient facts are shown by the said relators on which they should

be permitted to use the name of the said territory in said action.

"Second.   The said relators do not state facts sufficient in their petition to entitle them to the relief demanded or to a temporary order of injunction as issued therein."

. The facts as disclosed by the record are that the relator obtained a franchise from the city of Oklahoma City empowering them to lay gas mains in the streets and alleys of the said city, and was engaged in laying pipes in the streets at the time of the commencement of this action; that thereafter and in April, 1902, the city council granted to De-Wolfe and his assigns a franchise empowering him to lay pipes in the streets of the said city for the purpose of furnishing gas to the said city and its inhabitants, and was required to make a deposit of $5,000 for the purpose of securing the building of the plant in accordance with the terms of his franchise, and to execute a bond to the city payable to any one who might be injured thereby, conditioned that in laying the mains he would not injure any water or gas pipes or other pipes now laid in said city.   The franchise was granted to DeWolfe at a special meeting of the council called by the mayor, on the petition of three members of the council.   A notice was served on all the members of the council except Edward L. Dunn, who was absent from the city. At the special meeting of the council neither the mayor, C. G. Jones nor Edward L. Dunn, president of the council, were present, and one Hugh McCredie was elected as acting president of the council.   All of the councilmen of said city except one were present at the meeting.   The ordinance granting the franchise was read and adopted by eight votes of the council, and the same was   then · and there approved and

signed by Hugh McCredie, acting president of the council, and accepted by DeWolfe, and the next day was published in the daily Oklahoman, the official newspaper of the city. DeWolfe complied with the conditions upon his part, including the deposit with the city clerk of $5,000 to insure the faithful performance of the conditions of the franchise.

At the next regular meeting of the council, the mayor, being still absent from the city, Dunn undertook to veto said ordinance in writing, assigning his reasons therefor, and claiming to act under the authority of his office as president of the council and acting mayor. Afterwards, on the 30th day of July, 1902, there was another ordinance presented to the council granting to DeWolfe an extension of time in which he should complete the said gas plant under the provisions of his franchise before granted, which ordinance was regularly passed and approved by the mayor, and published in the official paper of that city, and DeWolfe, as required, furnished bond in the sum of $25,000 to idemnify any and all persons for any and all damages occasioned to any other person, company or to the city by reason of laying of the pipes in the streets and alleys thereof.

Section 4224, Wilson's Annotated Statutes, 1903, provides: "Every action must be prosecuted in the name of the real party in interest    *    *    *    ."

Conceding that the territory is the real party in interest in this case, can a private individual whose rights are affected maintain an action in the name of the public, the territory. It is the duty of the county attorney for the several counties to appear in the district courts of their respective counties and prosecute and defend on behalf of the

territory or his county all actions or proceedings, civil or criminal, in which the territory or county is interested or a party. It is the duty of the attorney general to appear for the territory, and prosecute and defend all actions and proceedings, civil and criminal, in the supreme court, in which the territory shall be interested as a party. (*Board of Education v. Territory,* 70 Pacific Rep. 796.)

Section 4224, *supra,* was adopted with the civil code of the state of Kansas, and the supreme court of that state has frequently passed upon this question. The case of *State v. Anderson,* 5 Kans. 115, was an action brought at the instance of the superintendent of public instruction to enjoin the treasurer of the state from paying over certain moneys, and we quote from the opinion:

"There is another ground which would seem to be fatal had it been insisted upon in a proper way. The state is the plaintiff; yet no act of the legislature is found directing such a suit to be brought.  *  *  *  The attorney general, the law officer of the state, appears officially in this court to resist the prayer of the petition. So that we look in vain for any authority on the part of the state to institute such proceedings. It is true that in the affidavit made to the petition, the superintendent of public instruction states that he has, as such officer, charge of the school interests of the state, and that the action is instituted at his instance to protect such school interests of the state; but we fail to find any law confiding in that officer any such duty either in express terms or by implication."

The case of *Robert et al. v. State ex rel. Dresher,* 10 Kans. 9, was an action by the state on the relation of Dresher for mandamus. We quote from the syllabus:

"A mandamus will not lie at the instance of a private

citizen to compel the performance of a purely public duty. Such a suit must be brought in the name of the state, and the county attorney or attorney general are the officers authorized to use the name of the state in legal proceedings to enforce the performance of public duties."

The above was confirmed in the case of *County Commissioners v. Jefferson County*, 10 Kans. 16.

We quote from the opinion in *State ex rel. v. Commissioners of Jefferson County*, 11 Kans. 71:

"Under the statute of this state, no private person has any right to use the name of the state to prosecute any civil action. Neither has any public officer any such right unless specifically authorized to do so by statute. (*State v. Anderson*, 5 Kans. 90.) And in every action, civil or criminal, prosecuted in this court, in which the state is a party in interest, the attorney general is bound by law to appear and prosecute or defend for the state. Therefore, if this action or proceeding is rightfully brought in the name of the state as plaintiff, then the attorney general is bound by law to prosecute the same, although the state may have no vital interest in the controversy. If this action is rightfully brought, then the state furnishes or may furnish counsel for one of the litigants in a purely private action."

In this case the title to the action was amended by consent, and the cause proceeded.

"If the injury is one that particularly affects a person, he has a right of action. If it affects the whole community alike, their remedy is by proceedings by the state through its appointed agencies." (*Miller v. Town of Palermo*, 12 Kans. 14.)

"If the wrong is of a public nature affecting the community in general, the state, through its proper officers, can

alone maintain the action.    *    *    *    So too we think that the process of injunction may be invoked by the state in any proper case. Indeed we know of no reason why the state may not avail itself of any writs or processes of law available to individuals for the enforcement of rights and redress of wrongs." (*State ex rel. v. McLaughlin*, 15 Kans. 233.)

"Public actions and private actions are intended to be kept separate. Public actions may be prosecuted in the name of the state, county or other public corporation, but private actions must be prosecuted in the name of the persons beneficially interested therein." (*Crowell v. Ward*, 16 Kans. 62.)

"It will therefore be seen that by sub-chapter 79, we have an act of the legislature giving the right to private persons to institute certain proceedings in the name of the state of Kansas to effect certain public matters, a right not previously existing, and a right not now existing except by virtue of the provisions of such chapter." (*State ex rel. v. Smith*, 31 Kans. 132.)

It is clear from the statute and authorities above quoted that in a case where the public is interested and it is necessary to bring the action in the name of the territory, that it can only be brought at the instance of the public officer authorized by statute, and cannot be instituted by an individual whose rights are only affected in common with the public; and the individual has no right to use the name of the territory in bringing an action, except in case where special authority is given by the statutes of this territory. Nor do we think the allegation in plaintiff's petition that the attorney general and county attorney had refused to bring the action is sufficient to authorize him to use the name of the territory, and to bring the action in the interest of the

public. If a public official refuses to do his duty, the statutes of the territory have made ample remedial provisions, and upon proper application the court may appoint a person to perform the duty, but to permit a private individual to bring an action in the name of the public or territory by a bare allegation in his petition that the public officers have been requested to act and refused, would be to take away from the official the right to protect the public and to exercise the authority vested in him.

Counsel for plaintiff in error contends in his brief, and filed an affidavit at the hearing of the motion to dissolve the injunction, that the relator is directly and personally affected by the threatened acts complained of. This contention is sufficient argument to support our views, for if the relator is particularly and especially affected, and differently from the public generally, he may maintain an action in his individual name for injunction, and that notwithstanding others of the public may also be affected. He in such case would be the real party in interest, and therefore under the statute quoted must bring the action in his own name.

But aside from the form in which the action is brought, where it is possible this court will always endeavor to get at the substance of the case. If the action had been properly brought by the relator as plaintiff, do the facts as disclosed by his petition warrant the court in granting and issuing an injunction? By act of congress, approved July 30, 1886, U. S. statutes at large, vol. 24, page 170, it is provided:

"That legislatures of the territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases; that

is to say:  *  *  *  Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever."

Section 398, Wilson's Statutes, 1903, provides:

"The council may provide for, and regulate the lighting of the streets, and the erection of lamp-posts, and the council shall have the power to make contracts with, and authorize any person, company or association to erect gas or electric works in said city, and give such person, company or association the privilege of furnishing gas, or electricity, to light the streets, lanes and alleys of said city for any length of time, not exceeding 21 years. But no such grant shall be so conditioned as to prevent the council from granting to other persons, or companies, or corporations, the right to use the streets for like purposes; and all such grants shall be subject at all times, to reasonable regulation by an ordinance, as to the use of streets and prices to be paid for gas or light."

It is clear from the statutes above quoted that the city in granting the franchise and right to the use of the streets and alleys for the purposes claimed could not grant exclusive right to the relator, and the granting of such a right was conditioned that it would not prevent the council from granting to other persons, companies or corporations the right to the use of the streets for like purposes. There is nothing in the petition of the relator that will sustain the contention that it will sustain damage peculiar to itself by reason of the construction of the defendant in error's gas plant, but upon the hearing of the motion to dissolve the temporary injunction, relator introduced evidence in the form of an affidavit of A. H. Branch, its president, in which it is stated that:

"I am the president and general manager of the Oklahoma Gas & Electric Company, a corporation, and the relator in this cause. Said corporation is now engaged in the work of laying gas mains and service pipes in Oklahoma City. It is also engaged in the work of constructing its power house, gas holder and all other machinery and connections, for a complete, well equipped and up to date gas plant, covering the city of Oklahoma City. Said company already has laid several miles of gas mains through the streets and alleys of said city, and is about ready to commence the laying of service pipe connecting said mains with residences and business houses of said city, and said corporation will have said gas plant completed, in operation and supplying gas to the people of Oklahoma City on or about the 15th day of October, 1902.

"Affiant further says that the defendant proposes to lay its mains across, alongside of and parallel with the mains of said relator; that in many of the alleys of said city said relator has already laid its mains on the north side thereof; tnat the said defendants propose to use the same alleys, and to lay their mains on the south side thereof; that the water pipes of said city are laid along the same alleys, underneath the center thereof.

"If the defendants are permitted to lay their mains through the alleys as aforesaid, it will be necessary for the relator, in order to make its service connections with the residences and business houses on the south side of said alleys, in every instance, to cross the main of the said defendants, and it will also be necessary for the said defendants, in order to make any connection on the north side of said alleys, to cross the main of the relator. Relator further says, that in laying gas pipe it is necessary that said pipe be laid to an established grade in order to secure proper drainage, and that if the said defendants are permitted to lay their mains, as aforesaid, and as they propose doing. and as it will be

necessary for them to do, in the event they construct a plant in Oklahoma City, the relator in this cause will be compelled, in making every connection as aforesaid, to expend an additional sum of money on account of the mains and pipes of the said defendants, on account of the fact that it requires more time and labor to lay a pipe over or under another than. it does when there is no pipe buried. Said relator will be further specially injured in that every intersection of its pipe by the pipe of the defendants is a constance source of danger on account of the interference with the grade of the pipe of both the relator and the defendant at such points of intersection and the danger of the pipe of each of said parties dropping out of grade by reason of caving. The relator will be further specially injured by the construction of a plant by the defendants, on account of the danger at every point of intersection of breaking or cracking mains and service pipe in crossing.

"Affiant further says that the relator will be specially injured by the construction of a plant by the defendants, on account of the fact that such a plant would depreciate the value of the property of the said relator, both from the physical point of view as hereinbefore explained, and that also in the way of earnings on its investment and the market value of its property.

"And further affiant says not.

"A. H. BRANCH."

As will be observed from the affidavit of the president as quoted, the matters of which he complains that will necessarily injure the relator, would be such as is necessarily incidental to the laying of two sets of pipes in the same streets and alleys, and was only such as must have been contemplated and considered by the relator when it took its franchise, for it cannot be disputed that the city council could only grant such privileges and rights as under the law

they were permitted and authorized to grant, and the statement that the relator would be damaged by the depreciation in the value of its plant and the market value of its property was also a matter which of necessity must have been taken into consideration by the relator when it took its franchise. The undoubted purpose of the statutes above quoted was to take from cities the right to grant a franchise, and make a contract which would give the exclusive right and privilege to a single person or company or corporation, and thereby shut out the possibility of competition; and if the relator is damaged by reason of competition which is authorized by the laws, and his property thus depreciated in value, it would certainly not be sufficient reason to maintain an action, the object of which is to prevent competition, and avoid the force and effect of the provisions of the statutes quoted.

The plaintiff in error, however, contends that the ordinance granting the franchise to DeWolfe is void for the reason that notice of the special meeting at which the ordinance was passed was not served upon one of the members of the council, and was approved by the presiding officer of that meeting the same night in the absence of the mayor and president of the council from the city. We deem it unnecessary to discuss this contention, for the reason that the record discloses that subsequently the mayor and council ratified the ordinance questioned, and extended the time to complete the plant, and that if there was some irregularity in the adoption of the ordinance in the first instance, that the subsequent ratification thereof by the mayor and council in legal session, and of which there is no complaint even by plaintiff in error, would cure such irregularities, and thereby bind the city.

30—Vol 13

The order of the district judge dissolving the injunction was clearly right, and is therefore affirmed, with costs to plaintiff in error.

Burwell, J., who made the order dissolving the injunction, not sitting; Gillette, J., absent; all the other Justices concurring.