OKLAHOMA GAS AND ELECTRIC COM-
PANY, an Oklahoma Corpora-
tion, Appellee,

v.

TOTAL ENERGY, INC., a corporation, and
Kavanaugh-Finley Corporation, a
corporation, Appellants.

No. 44939.

Supreme Court of Oklahoma.

July 18, 1972.

**918**

H. Duane Stratton, Paul Walters, Oklahoma City, for appellee.

James L. Kincaid, Tulsa, J. Howard Edmondson, Oklahoma City, Donald A. Kihle, Tulsa, Bert Barefoot, Jr., Edward H. Moler, Oklahoma City, for appellants.

J. A. Rinehart, El Reno, amicus curiae.

IRWIN, Justice:

In a proceeding commenced by Oklahoma Gas and Electric Company, the trial court perpetually enjoined Total Energy, Inc., and Kavanaugh-Finley Corporation, appellants, "from generating, distributing and selling electricity within the limits of the City of The Village, until such time as they have obtained a franchise". Appellants appealed.

The parties will be referred to as they appeared in the trial court. Oklahoma Gas and Electric Company will be referred to as O G & E; and Total Energy, Inc., and Kavanaugh-Finley Corporation will be referred collectively as defendants, or separately by name. Although other parties were named defendants in the trial court, they are not involved in this appeal.

The pertinent facts are:

Total Energy and Kavanaugh-Finley are separate and distinct entitites.

O G & E is engaged in the generation, transmission, distribution and sale of electricity in the State of Oklahoma, and serves the City of The Village under a valid, existing franchise. The voters of the City of The Village approved this franchise under the following proposition:

> "Shall a franchise be granted to the Oklahoma Gas and Electric Company, a corporation, its successors and assigns giving it the right to construct, maintain and operate a system of poles, wires, conduits and other fixtures in, upon, across, and under and over the streets, alleys, public grounds and other places in the Town of *The Village, Oklahoma County,* Oklahoma, for the purpose of transmitting, distributing and selling electricity for all purposes for which it may be used, to the Town and the public generally, * * *."

Neither Total Energy nor Kavanaugh-Finley have been granted a franchise by The Village.

Kavanaugh-Finley and IDS Mortgage Development Company, joint venturers, referred to herein as Kavanaugh-Finley, owned real estate within the City of The Village. They platted it into lots and dedicated certain portions thereof to the public for public streets. The platted property is known as the Whispering Hills Addition to the City of The Village. Kavanaugh-Finley presently plans to construct, own and operate a 440 unit apartment project; and ultimately plans to build, own and operate a total of 1760 apartment units and a 300,000 square foot shopping center all within the Whispering Hills Addition. O G & E suggests that approximately 5,000 people will eventually live in Whispering Hills Addition.

Total Energy proposes to construct a total energy plant within the addition, on

land leased from Kavanaugh-Finley. Total Energy will generate and furnish the electricity only for the Kavanaugh-Finley project, and its services would not be offered to any other person or entity. Kavanaugh-Finley, as an inducement to purchase the services from Total Energy, will receive a share of the profits of Total Energy.

Total Energy's distribution system used in transmitting electricity to Kavanaugh-Finley, will be under a portion of the public streets dedicated to public use by Kavanaugh-Finley. Kavanaugh-Finley is the abutting landowner on both sides of the streets under which the transmission lines of Total Energy will be buried. In the plat of the Whispering Hills Addition, Kavanaugh-Finley expressly reserved an easement and right to construct, maintain, operate and remove facilities for the transmission of electricity and other services under and across the dedicated public streets.

In its conclusion of law the trial court found defendants' use of the streets without a franchise would be in violation of Article 18, § 5(a) of the Constitution; that the rights of a franchise granted a utility by a municipality are more than a right to occupy and use the streets and other public places; defendants' proposed plan of operation is a business affected with a public interest; and defendants have a right to engage in such public business only after securing a franchise for such purpose. The trial court then perpetually enjoined *both defendants* from generating, distributing and selling electricity within the corporate limits of the City of The Village until such time as they obtained a franchise.

It appears the trial court's judgment is based on two grounds: (1) a franchise is required to use public streets to conduct defendants' activities; (2) defendants' activities constitute a business affected with a public interest, and a franchise is required to conduct such business.

The controlling issue presented is whether defendants must obtain a franchise to conduct their activities.

The parties have divergent views concerning the meaning of the word "franchise"; the rights acquired by obtaining a franchise; and what individuals or entities may or may not do within the corporate limits of a municipality without first obtaining a franchise from that municipality.

Defendants contend a franchise grants only the right to use public streets, and other public ways, of a municipality for the construction, maintenance and operation of facilities used for the purpose of conducting a business affected with a public interest; and that Oklahoma follows the general rule that an electric company is not required to secure a franchise to serve customers if public streets or other public ways of the municipality are not used for its operation.

O G & E contends that a franchise is more than the mere right to occupy streets, alleys and other public ways; that it carries with it the right to engage in business within a municipality with the normally necessary, incidental right to using public streets; that a franchise is a "property right" and includes the right to conduct a public utility business and to be protected against an unlawful interference, or unlawful competition. In this connection, O G & E argues that defendants' proposed activities affect the public interest since they propose to offer the services of a public utility; and, being a public utility, they may not conduct their activities within the City of The Village without a franchise.

17 O.S.1971, § 151, defines the term "Public Utility"; and § 152, relates to the Corporation Commission's jurisdiction over public utilities and provides that it shall have general supervision over all public utilities.

It is unnecessary to determine whether defendants' activities fall within the definition of a "public utility", or would be under the general supervision of the Corporation Commission. The issue here does not involve defendants' "status", or who has supervision over their activities, but only

whether a franchise is required to conduct their activities.

In considering this issue, we will first determine whether a franchise is required to generate, distribute and sell electricity within a municipality if the public streets or other public ways are not used.

Article 18, § 5(a) of our Constitution provides:

"No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; * * *."

Early legislative enactments shed some light on the meaning of the word "franchise". Chapter 10, Article XI, of the Revised Laws of 1910, relates to the Powers and Duties of City Councils. Sec. 593 thereof, [now 11 O.S.1971, § 664] provides that "The council may provide for and regulate the lighting of the streets, the erection of lamp posts, and the council shall have the power to make contracts with, and authorize any person * * * to erect * * * electric works in said city and give such person * * * the privilege of furnishing * * * electricity to light the streets * * *. But no such grant shall be so conditioned as to prevent the council from granting to other persons * * the right to use the streets for like purposes under the provisions of Sections 5a and 5b of Article XVIII of the Constitution; * * *."

In the above enactment, the language "right to use the streets" is used in connection with the granting of a franchise under the Constitution. In Territory ex rel. Oklahoma Gas and Electric Company v. De Wolfe (1903), 13 Okl. 454, 74 P. 98, Relator sought a permanent injunction to restrain defendants from laying gas pipes in the streets and alleys. Relator held a franchise, apparently granted by municipal ordinance, authorizing use of the streets for its pipes. Defendants' franchise was granted by a municipal ordinance which the court determined was valid. The court construed § 398, Wilson's Ann.St. 1903, identical with § 593 of the Revised Laws of 1910, except for addition of " * * * under the provisions of Sections 5a and 5b of Article XVIII of. the Constitution" contained in the 1910 laws. It appears that prior to the adoption of Art. XVIII of the Constitution, franchises could be granted by a municipal ordinance without necessity for the vote of the people. In denying the injunction, the Court said: "It is clear * * * that the city, in granting the franchise and right to the use of the streets and alleys for the purposes claimed, could not grant exclusive right to relator, and the granting of such a right was conditioned that *it would not prevent the council from granting to other persons * * * the right to the use of the streets for like purposes*." (emphasis ours)

Chapter 10, Article XV, of the Revised Laws of 1910, relates to the Powers and Duties of Board of Trustees and Other Town Officers. Sec. 680 [Nineteenth] thereof, provides that they shall have the power "To authorize the construction and maintenance of * * * electric lights and telephone wires along or through the streets and alleys within the corporate limits, and to grant rights and franchises to persons, * * * for such purpose, under the provisions of Sections 5a and 5b of Article XVIII of the Constitution; but no exclusive right shall be granted for any other purpose. The streets may be granted on the same terms to all desiring to compete with each other in the business of furnishing gas, electricity, * * * electric lights, * * *, and all shall be subject to reasonable regulations * * *."

The above proviso is now codified as 11 O.S.1971, § 1004 [Nineteenth] and there has been no material change since its original enactment. Although the language "to compete with each other in the business of furnishing * * * electricity" is used, the grant is used in connection with "the use of the streets" and not to the authority to conduct the business.

In discussing the word "franchise" in Oklahoma Gas & Electric Co. v. Wilson & Co., 146 Okl. 272, 288 P. 316 (1930), we held:

"The word 'franchise' is generally used to designate a right or privilege conferred by law. To be a 'franchise' the right possessed must be such as cannot be exercised without the express permission of the sovereign power. It is the privilege of doing that which does not belong to the citizens of the country generally by common right."

This language is used in McQuillin, Municipal Corporations [3rd Ed.] § 34.04, page 15:

"The right to conduct a business of a public utility and use of the streets and public ways for this purpose * * * is required to be conferred by public authority, and this constitutes the giving of a franchise."

And at page 16, this language is used:

"The term franchise as it is ordinarily used in the decisions and by text writers, * * * means the right granted by the state or a municipality to an existing corporation or individual to do certain things which a corporation or individual otherwise cannot do, such as the right to use the street * * * to erect thereon poles and wires * * * for electric light purposes. * * *."

In City of Okmulgee v. Okmulgee Gas Co., 140 Okl. 88, 282 P. 640, our Court was of the view that the Constitutional proviso [Article XVIII, § 7] that "no exclusive franchise shall ever be granted" was placed therein because the framers of our Constitution had in mind that, "in order to promote business, we must have competition in all lines of business, including public utilities, and therefore provided for the qualified electors in cities and towns voting as many competitive franchises as they deemed necessary to secure such competition". This language might indicate a franchise is granted for the purpose of engaging in a business within a municipality rather than for the purpose of using streets or other public ways to engage in that business.

In Bartlesville Electric Light and Power Company v. Bartlesville Interurban Ry. Co., 26 Okl. 453, 109 P. 228 (1910), plaintiff [holder of a franchise] brought an action to enjoin defendant [who did not have a franchise] from using public streets for transmission of electricity. Plaintiff did not allege defendant's use of the streets injured its physical property or interfered with its operation. Plaintiff's action was premised upon the grounds that defendant's activities encroached upon the rights to maintain or operate its plants and furnish electricity to the inhabitants of the city. In discussing the activities of the defendant, we said:

"Its right to sell light and power is not dependent upon any franchise, but its right to use the streets and public grounds of the city for that purpose does depend upon the consent of the city; and, when it uses the streets without that consent, it is not only guilty of maintaining a public nuisance, but also inflicts upon plaintiff [the holder of the franchise] a special injury by its unlawful act which may be restrained."

The special injury plaintiff sustained in the Bartlesville case, supra, by reason of defendant's unlawful activities was a loss of a portion of its business, not an injury to its physical property or to its operation. We reversed a trial court judgment which denied plaintiff injunctive relief. In other words, plaintiff, as holder of the franchise was entitled to injunctive relief upon the grounds that defendant, who did not have a franchise, was unlawfully interfering with plaintiff's business, and not upon the grounds defendant was injuring plaintiff's physical properties or interfering with the operation of its physical property.

*In the above case we said unless the streets and public grounds are used, a franchise is not necessary,* but it would be difficult, if not almost impossible, to construct and operate a light and power plant without the use of the streets and public

grounds, and the right to use the streets and public grounds suggest the construction and operation of the power plant as a necessary incident thereto. (emphasis ours)

It is interesting to note that in Bartlesville, supra, no reference was made to any statutory or constitutional law relating to franchises. However, the records disclose that the case was filed in the District Court in March, 1909, and adjudicated by this Court in May, 1910, and had defendant obtained a franchise pursuant to the Constitution, as it was then and is now, the injunction would not have been granted.

Article IX, § 34, of the Constitution, provides:

" * * * The term 'public service corporation' shall include all transportation and transmission companies, all gas, electric, heat, light and power companies, and all persons, firms, corporations, receivers or trustees engaged in said businesses, and all persons, firms, corporations, receivers or trustees authorized to exercise the right of eminent domain or *having a franchise to use or occupy any right of way, street, alley or public highway,* * * * in a manner not permitted to the general public, and all persons * * * engaged in any business which is a public utility or a public service corporation, at present time or which may hereafter be declared to be a public utility or a public service corporation. * * *." (emphasis ours)

It is to be noted the word "franchise" has reference only to use or occupancy of streets and public ways and not to the operation of a business.

■ We hold a franchise, granted by a municipality in compliance with Article 18, § 5(a) of the Constitution, grants the holder a right to use public streets, and other public ways, for the purpose of maintaining and operating a business affected with a public interest within the municipality, and embraces the privilege of conducting such business. However, if streets or other public ways are not used in maintaining and operating such business a franchise is not required to generate, distribute and sell electricity within a municipality.

■ Our holding should not be construed to mean that if the streets or other public ways are used for the purpose of generating, distributing and selling electricity within a municipality, that a franchise from the municipality is always required. In this connection see Caddo Electric Cooperative v. State (1964), Okl., 391 P.2d 234.

■ Having held a franchise is not required to generate, distribute and sell electricity within a municipality if the public streets are not used for that purpose and neither of the defendants will be using the public streets in generating electricity, the trial court erred in perpetually enjoining defendants from generating electricity within the municipality until they obtained a franchise. Since Kavanaugh-Finley will not be using the streets in distributing and selling the electricity, the trial court erred in perpetually enjoining it from distributing and selling electricity until it obtained a franchise. We therefore reverse that portion of the trial court's judgment which perpetually enjoined both defendants from generating electricity within the municipality until they obtained a franchise. We also reverse that portion of the judgment which perpetually enjoined Kavanaugh-Finley from distributing and selling electricity until it obtained a franchise.

This leaves for consideration only that portion of the judgment which perpetually enjoined Total Energy from distributing and selling electricity until it obtained a franchise. The Bartlesville case, supra, supports the proposition that O G & E is entitled to injunctive relief against Total Energy if it is unlawfully interfering with O G & E's business. In Oklahoma Gas & Electric Company v. Wilson, supra, we held that when a public utility has undertaken and professed to serve the inhabitants of certain cities and towns, the Corporation Commission has the power within constitutional and reasonable limitations to compel

such utility to serve all inhabitants thereof who may apply for such service. When O G & E obtained its franchise and undertook to serve electrical power to the City of The Village, the Corporation Commission had the power within constitutional and reasonable limitations to compel O G & E to serve all inhabitants of the City of The Village who applied for electrical services.

Total Energy and O G & E are competing for the privilege of selling electricity to Kavanaugh-Finley. O G & E has obtained a franchise to use the streets for distribution lines in offering electricity to all inhabitants of the City of The Village, including Kavanaugh-Finley. Total Energy does not have a franchise, and seeks only to serve Kavanaugh-Finley without any obligation to serve any other inhabitant of The Village. If Total Energy prevails, it can and will take from O G & E a portion of its business. In our opinion, Total Energy's activities will interfere with the business of O G & E. Whether such activities are lawful or unlawful depend upon whether Total Energy has the legal right to use the streets in conducting its activities.

Defendants contend that by virtue of the reservation contained in Kavanaugh-Finley's plat, that Kavanaugh-Finley, its successors and assigns, have the legal right to use the public streets within the Whispering Hills Addition to generate, distribute and sell electricity without obtaining a franchise. The reservation relied upon expressly reserved "a perpetual easement and right to construct, lay, install, own, operate, repair, remove and maintain lines for the transmission of electricity, * * * in, under, along and across any of the streets and easements shown * * *" on the plat.

In Bradley v. Spokane & I E R Co., 79 Wash. 455, 140 P. 688, a reservation was made in a dedication reserving to the dedicators and their assigns the right to lay water and gas pipes and electric wires and to erect poles for such purposes in the streets. Thereafter, the city vacated the streets and alleys in the addition. The issue involved ownership of the vacated streets as between the abutting landowners and dedicators' assignee. That Court determined that when streets and alleys were vacated, the effect was to vest title to the land embraced within such streets and alleys in the owners of the abutting property in legal proportions and held: "Reservation in a dedication of platted streets, of right to lay water and gas pipes and electric wires, and to erect poles for such purpose, and to construct and operate * * cable and motor railways, being repugnant to proper control of the streets of the city, is void as against public policy." Also see Lanhan v. Forney, 196 Wash. 62, 81 P.2d 777.

In Wills v. City of Los Angeles, 209 Cal. 448, 287 P. 962, 69 A.L.R. 1044, an owner conveyed a right of way to a strip of land for street purposes containing the following proviso: "That no right or franchise for a street railroad over the said right of way be given by [the City] and that the same shall not be used for street railway purposes." The conveyance also contained a proviso for forfeiture in case of breach. In holding the restrictive proviso invalid the Supreme Court of California said: "The control of the streets of the city is a purely governmental process, involving the exercise of legislative authority under the police and other powers conferred by law. It is too obvious for extended argument that one individual who has conveyed his property for a governmental purpose may not, on penalty of forfeiture, sit in judgment over the exercise of that governmental function * * *. No individual can by contract reserve the right to control the use of a street when once the dedication for that purpose is made."

In City of Camdenton v. Sho-Me-Power Corporation, 361 Mo. 790, 237 S.W.2d 94 (1951), the City brought an action against Sho-Me for adjudication of the parties' respective rights to own and operate an electric system. Sho-Me relied upon a reservation in a deed reserving to the dedicators,

and assigns, the right to locate, build, maintain and operate the electric system through and under the streets therein dedicated. The Supreme Court of Missouri determined that the general rule is that a dedicator cannot attach conditions or limitations with the legal character of the dedication, or contrary to the public policy, or which exclude public control of the property, but if he does so, the conditions or limitations are void as against public policy or as inconsistent with the grant, but the dedication is otherwise valid.

■ We hold the reservation in the plat wherein Kavanaugh-Finley expressly reserved a perpetual easement in, under, and across the dedicated streets, is void as against public policy, but the dedication is otherwise valid. Being void, no benefits under the reservation would inure to the benefit of Total Energy, Kavanaugh-Finley's assignee.

Defendants' last contention concerns the rights of an abutting landowner. They contend that an abutting landowner has the legal right to use the streets abutting his property in transmitting electricity for sale and distribution without first obtaining a franchise.

Assuming, without deciding, that Kavanaugh-Finley, as an abutting landowner, would have the right to transmit its own electricity under the streets for the purpose herein proposed, this does not necessarily mean that such rights are assignable to Total Energy.

■ The qualified electors of a municipality may vote as many competitive franchises as they deem necessary. City of Okmulgee v. Okmulgee Gas Co., supra. If Kavanaugh-Finley could assign rights to Total Energy to use the public streets for the purpose of engaging in competition with O G & E, it would be doing something indirectly which it could not do directly, i. e., granting a right to use streets for the purpose of engaging in competition with O G & E. Only the qualified electors of a municipality have that right. We therefore hold that Kavanaugh-Finley has no abut-

ting rights which could be assigned to Total Energy for the purposes herein proposed.

Since Kavanaugh-Finley's abutters rights, whatever they may be, are not assignable to Total Energy for the purpose proposed, and Total Energy proposes to use the streets for the purpose of engaging in competition against O G & E, that portion of the trial court's judgment perpetually enjoining Total Energy from distributing and selling electricity within the City of The Village until it obtains a franchise is correct.

The judgment of the trial court as the same concerns Kavanaugh-Finley is reversed.

That portion of the trial court's judgment perpetually enjoining Total Energy from generating electricity within the City of The Village until it obtains a franchise is reversed.

That portion of the trial court's judgment perpetually enjoining Total Energy from using the streets for distribution and sale of electricity within the City of The Village until it obtains a franchise is affirmed.

Judgment affirmed in part; reversed in part.

BERRY, C. J., HODGES and LAVENDER, JJ., and DON PEARSON, DAVID C. MATTHEWS, and LEROY MUSHRUSH, Special Judges, concur.

WILLIAMS, and JACKSON, JJ., dissent.

Vice Chief Justice DAVISON, Justice BLACKBIRD and Justice McINERNEY, having certified their disqualifications in this case, DAVID C. MATTHEWS, Perry, Oklahoma, DON PEARSON, Muskogee, Oklahoma and LEROY MUSHRUSH were appointed Special Justices in their stead.

JACKSON, Justice (dissenting).

I would affirm the judgment of the trial court. Article 18, §§ 5(a) and 5(b); Journal of the Constitutional Convention of

Oklahoma pages 22, 91, and 391 (relating to grants of franchises by the people of municipalities); State ex rel. Williamson v. Garrison, Okl., 348 P.2d 859; City of Okmulgee v. Okmulgee Gas Co., 140 Okl. 88, 93, 282 P. 640; Frost v. Corporation Commission, 278 U.S. 515–553, 49 S.Ct. 235, 73 L.Ed. 483; Bartlesville Electric Light & Power Co. v. Bartlesville Interurban Railway Company, 26 Okl. 453, 109 P. 228; and Article 9, Section 34, Oklahoma Constitution.

I am authorized to say that Justice Williams' dissent is based upon the authorities cited.