Dear Senate Martin,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Does Article XVIII, Section 5(a) of the OklahomaConstitution, which prohibits the grant or renewal of franchises"without the approval of a majority of the qualified electors,"apply to the grant or renewal of franchises for the operation ofcable television systems where such systems use public streetsand rights-of-way?
 2. If the answer to the first question is yes, is ArticleXVIII, Section 5(a) of the Oklahoma Constitution preempted underfederal law by 47 U.S.C. §§ 621, 626, and 636 of theCommunications Act (47 U.S.C. §§ 541, 546, and 556)?
 I. Applicability Of Article XVIII, Section 5(a) To Cable Television Systems
¶ 1 Okla. Const. art. XVIII, § 5(a) requires municipal corporations to obtain the approval of the voters prior to granting, extending, or renewing a franchise, as follows:
 No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon thirty days' notice; and no franchise shall be granted, extended, or renewed for a longer term than twenty-five years.
Id.
¶ 2 The purpose of the constitutional provision requiring voters' approval before a municipality grants, extends or renews a franchise is to give the electorate of a municipality absolute control over granting franchises. Okla. Gas Elec. Co. v. TotalEnergy, Inc., 499 P.2d 917, 924 (Okla. 1972). A franchise is a right or privilege conferred by law; it allows a corporation or individual to do things they could not otherwise do, such as use the streets to erect poles and wires for electricity. Okla.Elec. Coop., Inc. v. Okla. Gas Elec. Co., 982 P.2d 512, 515
(Okla. 1999). A franchise issued by a municipality under Okla. Const. art. XVIII, § 5(a) grants the holder the right to use public streets, and other public ways, for the purpose of maintaining and operating a business affected with a public interest within the municipality; however, if streets or other public ways are not used in maintaining and operating such business, a franchise is not required. Okla. Gas Elec. Co.,499 P.2d at 922.
¶ 3 Cable television systems have the right to use public roads and highways "for the purpose of erecting poles and posts, attaching equipment, wires and fixtures . . . and laying pipes and conduits under the surface" subject to the conditions set forth in the statute. 69 O.S. 2001, § 1401[69-1401] (b). However, "nothing herein shall be construed to grant the right to use the streets or other places of any municipality of this state without the consent of such municipality." Id. "A municipality may by ordinance or otherwise issue a certificate, license or permit, for the operation of a cable television system[,]" which must be nonexclusive and may not exceed a period of 25 years. 11 O.S.2001, § 22-107.1[11-22-107.1] (A).
¶ 4 Although Section 22-107.1(A) allows a municipality to issue a permit or license for operation of a cable system, a municipality may not authorize a cable system to use public streets or rights-of-way without a vote of the electorate pursuant to Okla. Const. art. XVIII, § 5(a). The right reserved to electors of extending or renewing municipal franchises cannot be taken away by the Legislature. State ex rel. Williamson v.Garrison, 348 P.2d 859, 865 (Okla. 1959) (statute providing for creation of public trusts will not be construed as permitting a grant of a franchise in violation of Article XVIII, §§ 5(a), 7). Statutes relating to municipal licenses "must be construed and applied subject to the constitutional provision requiring voter-approval for municipal franchises." Okla. Elec. Coop.Inc., 982 P.2d at 516. If public streets or other public ways are to be used to operate a cable television system, Article XVIII, § 5(a) requires the electorate to approve a franchise for its operation.[1]
 II. Preemption Of Article XVIII, Section 5(a)
¶ 5 You ask whether Article XVIII, Section 5(a) is preempted by47 U.S.C. §§ 541, 546, and 556, which are included in Subchapter V-A (Cable Communications) of the Communications Act of 1934 ("Act"), as amended.[2] The purpose of the subchapter is to:
 (1) [E]stablish a national policy concerning cable communications;
 (2) establish franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community;
 (3) establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems;
 (4) assure that cable communications provide and are encouraged to provide the widest possible diversity of information sources and services to the public;
 (5) establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by this subchapter; and
 (6) promote competition in cable communications and minimize unnecessary regulation that would impose an undue economic burden on cable systems.
47 U.S.C. § 521 (2001).
¶ 6 A "franchise" is defined in the Act as "an initial authorization, or renewal thereof," issued by a franchising authority to construct or operate a cable system. Id. § 522(9). A "franchising authority" is "any governmental entity empowered by Federal, State, or local law to grant a franchise." Id. § 522(10). A cable operator may not provide cable service without a franchise. Id. § 541(b)(1). The federal statutes referenced in your question set forth the general requirements for grant of a franchise (id. § 541), the requirements for renewal of a franchise (id. § 546), and policies on federal, state, and local cooperation, including preemption. Id. § 556(c). "[A]ny provision of law of any State, political subdivision, or agency thereof, or franchising authority, or any provision of any franchise granted by such authority, which is inconsistent with this chapter shall be deemed to be preempted and superseded."Id.
¶ 7 Congress has the power to preempt State laws under the Supremacy Clause. U.S. Const. art. VI, cl. 2. Laws of the federal government are "the supreme law of the land, `anything in the Constitution or laws of any state to the contrary notwithstanding.'" State ex rel. Miller v. Huser, 184 P. 113,114 (syllabus ¶ 4) (Okla. 1919) (citation omitted). Preemption occurs in four instances: (1) by express statutory language; (2) by a pervasive regulatory scheme; (3) when an actual conflict between state and federal law makes it impossible to comply with both; or (4) if the objectives and purposes of Congress are thwarted by State law. First Bank of Okarche v. Lepak,961 P.2d 194, 200 (Okla. 1998) (citation omitted). A State law is invalid under the preemption doctrine to the extent that it conflicts with a federal statute or when it "stands as an obstacle to the accomplishment and execution of the full purpose of Congress." Wilson v. Harlow, 860 P.2d 793, 799 (Okla. 1993) (citations omitted).
 A. Preemption Analysis of 47 U.S.C. § 541
¶ 8 Section 541(a) sets forth the general franchise requirements, which provide, in part, as follows:
 (1) A franchising authority may award, in accordance with the provisions of this subchapter, 1 or more franchises within its jurisdiction; except that a franchising authority may not grant an exclusive franchise[,] and may not unreasonably refuse to award an additional competitive franchise. Any applicant whose application for a second franchise has been denied by a final decision of the franchising authority may appeal such final decision pursuant to the provisions of section 555 of this title for failure to comply with this subsection.
Id.
¶ 9 The issue is whether Article XVIII, § 5(a) of the Oklahoma Constitution conflicts with the Act insofar as it requires voters to approve the grant or renewal of a franchise for operation of a cable system that utilizes public streets and rights-of way. Section 541(a)(1) is consistent with the Oklahoma law insofar as both prohibit exclusive franchises. See Okla. Const. art XVIII, § 7 ("no exclusive franchise shall ever be granted"). However, Section 541(a)(1) conflicts with the constitutional provision in that under Section 541(a)(1), a franchising authority may not unreasonably refuse to award an additional competitive franchise and under Article XVIII, § 5(a), the electorate may refuse to approve an additional franchise for any reason. Likewise, the federal appeal rights of an unsuccessful applicant for a franchise are inconsistent with a method that requires voter approval. The Act provides that any cable operator adversely affected by any final determination made by a franchising authority under sections 541(a)(1), 545 or 546 may commence an action in state or federal court within 120 days after receiving notice of such determination. Id. § 555(a). As section 541(a)(1) prohibits a franchising authority from unreasonably refusing to award an additional competitive franchise, judicial review under this section would be addressed to the reasonableness of the franchising authority's actions. As the reasonableness of voters' actions at the polls cannot be meaningfully reviewed, State law also conflicts with this section.
¶ 10 In Qwest Broadband Services, Inc. v. City of Boulder,151 F. Supp.2d 1236, 1246 (D. Colo. 2001), the Court held that the city charter's requirement that voters approve any franchise was preempted under 47 U.S.C. § 541. The Court found that as to the approval of franchises, city officials follow the will of the voters with no additional scrutiny or decision-making and thus abdicated franchising authority to the City's voting citizens.Id. at 1242. The Court found a direct conflict between federal and local laws because the voters are not "a governmental entity empowered by Federal, State, or local law to grant a franchise" and that it was impossible for the franchise to be granted by a governmental entity as required by the Act, and simultaneously granted by the voters as required by local law. Id. (citation omitted). The Court further found that by allowing voters unfettered and unreviewed discretion to grant or reject a franchise, the local law conflicted with every provision of Section 541.[3] Id.
¶ 11 The Act expressly preempts state laws concerning cable television to the extent they are inconsistent with federal law.47 U.S.C. § 556(c). Section 541(a)(1) of the Act prohibits a franchising authority from unreasonably refusing to grant a competitive franchise whereas Okla. Const. art. XVIII, § 5(a)
requires a franchising authority to deny a franchise if the voters disapprove the franchise for any reason. As there is a conflict between the two provisions, the State law is preempted.
 B. Preemption analysis of Section 546
¶ 12 Section 546 sets forth extensive requirements for renewal of a franchise, including public participation, but not public approval by vote, as follows:
 (a) Commencement of proceedings; public notice and participation
 (1) A franchising authority may, on its own initiative . . . before the franchise expiration, commence a proceeding which affords the public in the franchise area appropriate notice and participation for the purpose of (A) identifying the future cable-related community needs and interests, and (B) reviewing the performance of the cable operator under the franchise during the then current franchise term. If the cable operator submits . . . a written renewal notice requesting the commencement of such a proceeding, the franchising authority shall commence such a proceeding. . . .
. . . .
(b) Submission of renewal proposals; contents; time
 (1) Upon completion of a proceeding under subsection (a) of this section, a cable operator seeking renewal of a franchise may, on its own initiative or at the request of a franchising authority, submit a proposal for renewal.
. . . .
 (c) Notice of proposal; renewal; preliminary assessment of nonrenewal;
 (1) . . . the franchising authority shall provide prompt public notice of such proposal and . . . renew the franchise or, issue a preliminary assessment that the franchise should not be renewed and, at the request of the operator or on its own initiative, commence an administrative proceeding, after providing prompt public notice of such proceeding, in accordance with paragraph (2) to consider whether —
 (A) the cable operator has substantially complied with the material terms of the existing franchise and with applicable law;
 (B) the quality of the operator's service . . . has been reasonable in light of community needs;
 (C) the operator has the financial, legal, and technical ability to provide the services, facilities, and equipment as set forth in the operator's proposal; and
 (D) the operator's proposal is reasonable to meet the future cable-related community needs and interest, taking into account the cost of meeting such needs and interests.
. . . .
 1. At the completion of a proceeding under this subsection, the franchising authority shall issue a written decision granting or denying the proposal for renewal based upon the record of such proceeding, and transmit a copy of such decision to the cable operator. . . .
 (d) Basis for denial
 Any denial of a proposal for renewal . . . shall be based on one or more adverse findings made with respect to the factors described in subparagraphs (A) through (D) of subsection (c)(1). . . .
Id.
¶ 13 The Act provides for judicial review of the franchising authority's final decision. Id. §§ 546(e), 555(a). The Act also provides for an alternative procedure whereby "a cable operator may submit a proposal for the renewal of a franchise . . . at any time, and [the] franchising authority may, after affording the public adequate notice and opportunity for comment, grant or deny such proposal at any time." Id. § 546(h).
¶ 14 Any denial of a proposal to renew a franchise under the procedures outlined in Section 546 (a)-(d) must be based on an adverse finding with respect to the factors listed in Section 546(c)(1)(A)-(D), including compliance with the terms of the existing franchise, quality of service, ability, and reasonableness. Under Okla. Const. art. XVIII, § 5(a), voters may refuse to renew a franchise for any reason. Thus, there is a conflict between the two laws.[4] To comply with Section 546, a municipality's cable franchising renewal process must follow the federal procedure, which includes a limitation on denial of a franchise. The State constitutional provision that gives the electorate the unfettered discretion to deny a renewal of a franchise conflicts with the federal statutory scheme.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Article XVIII, Section 5(a) of the Oklahoma Constitution,which prohibits the grant or renewal of franchises withoutapproval of a majority of the electorate, applies to the grant orrenewal of franchises for the operation of cable televisionsystems where such systems use public streets and rights-of-way.
 2. Article XVIII, Section 5(a) of the Oklahoma Constitution ispreempted by the Communications Act, 47 U.S.C. §§ 541 and 546, tothe extent it requires voter approval for the grant or renewal offranchises for the operation of cable television systems, becausevoter approval conflicts with federal law procedures for thegrant and renewal of cable television franchises.
W.A. DREW EDMONDSON Attorney General of Oklahoma
KATHRYN BASS Assistant Attorney General
[1] This conclusion is consistent with Attorney General Opinion 78-185.
[2] This Act was amended by the Cable Communications Policy Act of 1984, the Cable Television Consumer Protection and Competition Act of 1992, and the Telecommunications Act of 1996.
[3] Section 541(a)(2) requires certain assurances from the cable operator relating to construction of facilities; Section 541(a)(3) requires the franchising authority to assure that access to cable service is not denied to subscribers because of the income of the residents in the local area; Section 541(a)(4)(B)-(C) allows the franchising authority to require "assurance that the cable operator will provide adequate public, educational, and governmental access channel capacity" and "that the cable operator has the financial, technical, or legal qualifications to provide cable service." Id.
[4] This conclusion was also reached by the Iowa Attorney General. See Iowa A.G. Opin. No. 85-10-1 (state law that requires the passage of an ordinance and approval at an election for renewal of a cable franchise is void as it is preempted by47 U.S.C. § 546, which prohibits the denial of renewal unless the cable operator fails to meet one of four specified factors).